**In the Interest of R. D., a Minor.**

**No. 1481.**

**Court of Appeals of Texas, Tyler.**

**Jan. 21, 1982.**

Guy N. Harrison, Longview, for appellant.

Michael L. Dunn, Longview, for appellee.

SUMMERS, Chief Justice.

This is an appeal from an order of the 307th District Court of Gregg County, sitting as a juvenile court, adjudging R.D. to be a child engaged in delinquent conduct.

R.D. was charged in the State's petition with the offense of burglary of a building. Present with R.D. at the adjudication hearing were his mother and his attorney and guardian ad litem. A jury being waived, the hearing was before the court without the aid of a jury. The court, by its order signed November 24, 1980, found beyond a reasonable doubt that R.D. was a child within the meaning of Title 3 of the Texas Family Code, having been born on January 3, 1964, and that he committed the offense of burglary as alleged. Accordingly, R.D. was adjudged to be a child engaged in delinquent conduct. Thereafter, at the conclusion of a separate disposition hearing, the court committed R.D. to the care, custody and control of the Texas Youth Council.[1] Appellant appeals from the adjudication phase of the case only.

We affirm.

Appellant predicates his appeal on a single point of error asserting that the court erred in admitting R.D.'s written statement as a voluntary confession. During the adjudication phase of trial appellant objected to the admission of such statement on the ground that he asked to see his mother; that this request was not allowed; and that to go ahead and take a statement in view of such request is to violate his rights not only under the Texas Family Code but under the United States and Texas Constitutions. The trial court overruled this objection and admitted the statement into evidence.

The record reflects that R.D. was arrested and brought to the police station in Gladewater, Texas, as a suspect in the burglary of the K. Wolens Store Building in Gladewater on or about May 11 and 12, 1980. The arresting officer, Ron Binge,

1. The court found that the child was in need of rehabilitation and that the protection of the public and the child required that disposition be made; that the best interest of the child and the best interest of society would be served by committing him to the Texas Youth Council.

testified that after the arrest he read R.D. his rights and told R.D. that he was arrested for burglarizing the K. Wolens Store; that no questioning of R.D. was done at that time; that he was sure he told R.D. that his brother had given a statement in the same case. Binge then testified:

> I took him in the office, told him to empty out his pockets, told him he'd have to go before a judge and I'm sure I told him that his brother and James Meadows was (sic) in jail and to my knowledge he went before the judge to have his rights read before I questioned him about anything.

Officer Binge took R.D. before Judge R.L. Long in an office at the police station for a reading of his rights. Binge then left the office leaving R.D. alone with Judge Long.

Binge further testified that R.D. had stated that he wanted to talk with his mother. At first Binge was unsure whether R.D. made this request before or after talking to Judge Long, but later agreed that it was made before R.D. was taken before the judge. Binge testified that an attempt was made to reach R.D.'s mother at that point; that since she had no telephone, a call was placed to a neighbor, and he believed R.D. "tried [to telephone] his aunt's house"; and that an officer was sent to get his mother but she was not at home. After those events, which lasted five or ten minutes, R.D. was taken before Judge Long to have his rights read to him.

Judge Long testified that R.D. was brought before him in an office at the Gladewater police station, and the two of them were left alone so that he might give R.D. his "juvenile warnings according to the Family Code." The record reflects that Section 51.09(b) [2] of the Texas Family Code was fully complied with; that Judge Long gave appellant all the required warnings; that in response to the judge's inquiries, "Do you want an attorney now?" and "Do you have any questions about your rights?", R.D. in each instance answered "No."

Judge Long further testified that while he was reading R.D. his rights, no one but the two of them were present; that he was convinced that R.D. understood his rights and did knowingly, intelligently and voluntarily waive those rights; that R.D. was then asked if he wished to make a statement; that R.D. said he did and did so by writing it on the paper furnished without any coercion, threat, pressure, promise of reward or benefit; that upon completion of the statement it was read back to R.D. for any corrections or additions he wanted to make and then signed by R.D. in the pres-

**2.** 51.09(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:

(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;

(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

(D) he has the right to terminate the interview at any time;

(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult; and

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

ence of Judge Long with no one else present. Judge Long then identified States Exhibit 1 as containing the written statement which he took from R.D. on May 13, 1980, the magistrate's warning of rights signed by him, the written waiver of rights signed by R.D. and the magistrate's certificate signed by him certifying the statement was signed by R.D. in his presence with no law enforcement officer or prosecuting attorney present and that R.D. did so voluntarily with understanding of its nature and contents.

As to R.D.'s request to see his mother, Judge Long testified as follows in response to questions by appellant's counsel:

Q. ... But you do recollect that he requested to talk to his mother?

A. Yes, I do. And I don't know if he did talk to her or not.

Q. And you are testifying that the statement was taken notwithstanding the fact that he asked to talk to his mother?

A. No, I'm not stating that, because my recollection of the conversation or his request to talk to his mother, I honestly don't remember, maybe he talked to his mother before he saw me, I just don't remember, but I do remember some discussion of him saying to someone that he wanted to talk to his mother.

Q. Alright. Well, you testified that you didn't hear any discussion between him and Mr. Binge, did you hear a discussion between him and anybody else?

A. No.

Q. Alright, so if you heard this about him wanting to talk to his mother, it would have been something between you and him.

A. That's correct.

Q. Alright. Notwithstanding him telling you that, even though he told you that, the statement was taken anyway? Because ya'll couldn't get his mother there?

A. The statement was taken.

Q. And you never saw his mother.

A. I never saw his mother, that's correct.

Q. Alright.

A. I wanted her there, I'll say that.

Appellant contends that R.D.'s request to talk to his mother was an indication that he was not voluntarily waiving his Fifth Amendment right to remain silent; that the interrogation should have ceased at that time and not commenced again until his mother was present. He argues that without the confession the evidence is insufficient to support the court's adjudication of delinquent conduct.

The threshold question in the case at bar is whether the juvenile appellant, by requesting to talk to his mother, invoked his Fifth Amendment rights. Appellant cites *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Burton*, 491 P.2d 793 (Cal.1971); and *Faulder v. The State of Texas*, 611 S.W.2d 630 (Tex. Crim.App.1980). We believe the principles enunciated by the United States Supreme Court in *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) are determinative of this question. In *Fare*, a 16½ year old juvenile had been arrested on suspicion of murder. Before being questioned by police officers at the police station, he was fully advised of his *Miranda* rights. The juvenile was on probation, had served a term in a youth corrections camp, and had a record of prior offenses. When initially questioned by officers, the juvenile asked to see his probation officer. Officers denied the request, and then the juvenile said that he would talk to them without consulting an attorney. He then proceeded to make statements and draw sketches implicating him in the murder. At trial the juvenile, as in the instant case, moved to suppress the statement as violating his Fifth Amendment right to remain silent; he likened his request to see his probation officer to a request for an attorney. The court denied the motion, admitted the statement into evidence, found that the juvenile committed the offense alleged and adjudged him to be a ward of the court. On appeal, the California Supreme Court reversed and, using

*Burton,* supra, as its authority[3], rejected a "totality of the circumstances" inquiry and held that the juvenile's "request to see his probation officer at the commencement of interrogation negated any possible willingness on his part to discuss his case with the police [and] thereby invoked his Fifth Amendment privilege."

The United States Supreme Court in *Fare* reversed and held that the California Supreme Court erred in finding that a juvenile's request for his probation officer was a per se invocation of that juvenile's Fifth Amendment rights. In *Miranda* the court established the rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease. The Supreme Court in *Fare* refused to extend the per se aspects of the *Miranda* safeguards beyond the scope of the holding in the *Miranda* case itself and declined to find that a request for a probation officer is tantamount to the request for an attorney. The court reasoned:

> The *per se* aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversarial system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts.
>
> \*　\*　\*　\*　\*　\*
>
> It is this pivotal role of legal counsel that justifies the *per se* rule established in *Miranda,* and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend.

The U.S. Supreme Court further held in *Fare* that the determination of whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation in order to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel. The court found no persuasive reasons for adopting a different test for juveniles than for adults: the totality-of-the-circumstances approach. This test includes an evaluation of the juvenile's age, experience, education, background, and intelligence. Also evaluated is whether the juvenile has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. On the basis of the totality of the circumstances, the Supreme Court in *Fare* found a voluntary and knowing waiver and upheld the trial court's finding.

■ In the instant case, we hold that the request of R.D. to talk to his mother did not per se invoke his Fifth Amendment rights. There was no evidence that appellant's mother was an attorney, and it is not likely that a mother will possess any legal background surpassing that of a probation officer. Under the reasoning of *Fare,* we find no justification for extending the per se safeguard of *Miranda* to a request for a mother.

Applying the totality-of-the-circumstances test, we find many similarities between *Fare* and the case at bar. There, the juvenile was 16½ years old; here he was almost 17. There, he was on juvenile probation; here he had been on juvenile probation. There, he had a record of prior offenses; that is true in the instant case. There, the defendant was sufficiently intelligent to understand the rights he was waiving. Here a psychologist's report indicates R.D., though having quit school in the ninth grade, "was functioning within the upper limits of Average or the lower limits of Bright Normal of cognitive functioning." In *Fare,* the juvenile "was not worn down by improper interrogation tactics or lengthy questions or by trickery or deceit"; like-

---

**3.** In *Burton,* the Supreme Court of California held that a minor's request, made during custodial interrogation, to see his parents constitut- ed an invocation of his Fifth Amendment rights.

wise, the record reflects here that no such tactics, maneuvers, or coercion were employed by Officer Binge or Judge Long.

We believe the case at bar is distinguishable from *Faulder v. State*, supra. In *Faulder*, the appellant, an adult charged with capital murder, while under custodial interrogation by Ranger Elliott and Officers Roach and McElroy, refused to sign a polygraph consent form and then stated several times during the interrogation that he wanted or needed a couple of days to get his thinking straight. The Court held that the appellant did indicate to the interrogating officers that he wished to invoke his right against self-incrimination, but the interrogation did not cease. The conviction for capital murder was reversed. In doing so, the court applied the totality-of-the-circumstances test (upheld in *Fare*, supra) and concluded that the State had failed to meet its burden of showing a relinquishment of the right to silence on the part of this appellant. The court reasoned that this conclusion was corroborated by appellant's refusal to incriminate himself in some three hours of continuous interrogation; that further support for this conclusion was found in testimony that Officer Roach deemed it necessary to try to "persuade [appellant] to go ahead and tell ... his story about what happened ...," as well as that Officer McElroy felt obliged to argue with appellant about his need for a couple of days.

 The instant case is dissimilar in that, unlike *Faulder*, the appellant in the case at bar clearly waived his constitutional right against self-incrimination. We arrive at this conclusion upon a consideration of the totality of the circumstances in this particular case under the principles set forth in *Fare*. Although Officer Binge indicated that R.D. may have said he would like to talk to his mother before saying anything, R.D. subsequently voluntarily and knowingly waived his Fifth Amendment rights after being given all the required warnings by Judge Long as a magistrate. Judge Long's testimony indicates that R.D.'s request for his mother was a request but not a condi-

tion. Furthermore, we have no testimony from R.D. on the point. Unlike *Faulder* (where a *Jackson v. Denno*[4] hearing was held at which the appellant and law enforcement officers testified), the instant case presents nothing to consider other than the request of R.D. to see his mother; that it was simply a request, not an invocation of his Fifth Amendment privilege against self-incrimination.

Appellant's point of error is overruled. The adjudication order of the trial court is affirmed.

---

4. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).