OPINION

John B. RANDALL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–85–240 CR.

Court of Appeals of Texas,
Beaumont.

June 18, 1986.

Clinard J. Hanby and Jan Woodward Fox, Haynes & Fullenweider, Houston, for appellant.

Gerald Goodwin, Dist. Atty., Angelina County, Lufkin, for appellee.

## OPINION

BURGESS, Justice.

John B. Randall was indicted for the murder of Leroy Cody, Jr. Randall waived trial by jury and plead "Not Guilty" to the court. The court found Randall guilty and assessed his punishment at sixty-five years confinement in the Texas Department of Corrections.

■ Randall brings forth three grounds of error. The first ground of error alleges the trial court erred in admitting appellant's written confession into evidence because appellant invoked his Fifth Amend-ment Rights by asking to see his father and by stating that he did not wish to do anything until his father arrived. Appellant admits that there have been no Texas cases which hold that a request to talk to or see a parent is a per se invocation of a defendant's Fifth Amendment Rights. In contrast, *In the Interest of R.D.*, 627 S.W.2d 803 (Tex.App.—Tyler 1982, no writ), held that a request for a juvenile to see his mother did not per se invoke his Fifth Amendment Rights. Further, each of the cases cited from other jurisdictions deal with minor defendants who request parents. This is certainly not the case before this court. This defendant was twenty years old at the time the statement was given.

Certainly a request to consult with, talk to or see a lawyer is a per se invocation of a defendant's Fifth Amendment Rights. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The rationale behind this concept is clear. An attorney can advise a defendant on the legal and practical consequences of waiving the Fifth Amendment protections. A parent is not so equipped. In practical application, a parent may erroneously advise a child to waive the privilege. The two requests are simply not analogous. The request for the parent was not a per se invocation of the Fifth Amendment privilege. The trial court did not err in admitting the confession into evidence. Ground of error number one is overruled.

■ The second ground of error alleges the trial court erred in finding the appellant guilty because the state failed to prove the offense occurred in Angelina County, Texas. Initially, we note that the issue of venue is not jurisdictional and thus may be waived for failure to raise the issue at trial. *Fairfield v. State*, 610 S.W.2d 771 (Tex. Crim.App.1981); *Ex Parte Watson*, 601 S.W.2d 350 (Tex.Crim.App.1980). While a plea of not guilty puts in issue the allegations of venue, it must still be made an issue. *Black v. State*, 645 S.W.2d 789 (Tex.Crim.App.1983). In the instant case, appellant made no motion for acquittal

based on venue, nor raised the issue in any motion for new trial. Since no issue was made in the court below, it is presumed that venue was proven. *Clark v. State,* 558 S.W.2d 887 (Tex.Crim.App.1977).

■ In any event, state's exhibit number 1–A, was admitted into evidence without objection. This exhibit is an autopsy report and shows the deceased was pronounced dead "3 mil. S. of Huntington, Precinct 3, Angelina County, Texas." Venue need only be proved by a preponderance of the evidence and such proof may be direct or circumstantial evidence. *Black, supra.* The state met its burden of proof. Ground of error number two is overruled.

· The final ground of error alleges the trial court erred in allowing the state to cross-examine appellant beyond the scope of a *"Jackson v. Denno"* hearing. Appellant complains of the following portion of cross-examination:

"Q  All right. The statement that they said you made, did you make that statement?

"A  Which statement?

"Q  The one that was read earlier?

"A  No, sir.

"Q  You didn't make that statement?

"A  No, sir.

"Q  You didn't say anything about that?

"A  No, sir.

"Q  Okay. Not only is it not voluntary, it is not true. Is that correct?

"A  To my knowledge.

"Q  There is nothing true about it?

"A  To my knowledge.

"Q  What do you mean to your knowledge?

"A  I don't know. I didn't say it. I didn't know anything about it.

"Q  Have you ever told people over in jail that you were going to play dumb and incompetent and get out of this?

"A  No, sir.

"Q  Never have told anybody that?

"A  No, sir.

"[DEFENSE COUNSEL]: Judge, again, I renew my objection. That's not part of Jackson v. Denno, to go into that.

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: Note our exception.

"Q  (By [PROSECUTOR]) Did you hear Mr. Ruth testify earlier today?

"A  Yes, sir.

"Q  Did he lie?

"A  I believe so.

"Q  Mr. Ruth lied when he said you were going to act like you were incompetent, and Mr. Sessions lied when he said you voluntarily gave that statement. Is that correct?

"A  I'm not calling him a liar.

"Q  All right. Well, Mr. Randall, either he told the truth or he lied, or he told the truth or he didn't tell the truth. Which was it?

"A  You lost me.

"Q  He either told the truth or he did not tell the truth.

"A  I don't guess he did because I didn't say it, and I know I didn't say it.

"Q  So he did not tell the truth?

"A  Yes.

"Q  Mr. Brandon, Mr. Ruth, Mr. Sessions and Mr. Brandon. Mr. Brandon didn't tell the truth either?

"A  About what?

"Q  About your voluntarily making that statement.

"A  No, sir, he did not tell the truth.

"Q  Okay. And Miss Wright. Do you remember her testimony? She said you were very cooperative and related what occurred, and that you would make statements, and you and David would discuss it, and you would make those statements to Miss Wright. And said you didn't ask for a lawyer. You were willing to sign it.

And when she told you where to sign, you looked at it and signed there.

"A  I signed it because I was scared.

"Q  Of Miss Wright?

"A  No. Chief Deputy Ron beside me.

"Q  But, of course, if she said you voluntarily made that statement and you actually talked about these events—

"A I didn't talk about it.

"Q Okay. Then she is not telling the truth either, is she?

"A I don't guess so.

"Q Everybody in this case is just not telling the truth, are they?

"A Not all the truth."

As to whether or not the statement was true, this was certainly put in issue by appellant's contention that the statement was not his. This is an entirely different situation than where a defendant does not challenge the statement itself, but only challenges the voluntary circumstances surrounding the statement. Here, the appellant was denying he even made the statement. Next, the question concerning "playing dumb" was legitimate cross-examination on the issue of whether the statement was freely and voluntarily given. Lastly, asking the witness to characterize directly opposite testimony, while not necessarily relevant to the issue of voluntariness of a confession, is certainly not reversible error. This ground of error is overruled. The judgment is affirmed.

AFFIRMED.