252 S.W.3d 319 (2008)
In the Matter of H.V.
No. 06-0005.
Supreme Court of Texas.
Argued April 12, 2007.
Decided April 11, 2008.
Rehearing Denied June 6, 2008.
*320 Tim Curry, Tarrant County Criminal District Attorney, Charles M. Mallin, Anne E. Swenson, David M. Curl, Assistant Criminal District Attorneys, Fort Worth, TX, for Petitioner.
Michael Shawn Matlock, The Matlock Law Firm, Fort Worth, TX, for Respondent.
Justice BRISTER delivered the opinion of the Court, in which Justice O'NEILL, Justice MEDINA, Justice JOHNSON, and Justice WILLETT joined.
This is the first appeal under a 2003 statute allowing appellate review of certain orders suppressing evidence in juvenile justice cases.[1] Because the statute contains no express grant of jurisdiction to this Court, we may review such interlocutory orders only if they fall within our general jurisdictional statutes, which were also amended in 2003. Finding that we have such jurisdiction, we affirm the court of appeals' opinion in part and reverse in part.

I. Background
Evidence presented at the suppression hearing here showed that sixteen-year-old *321 H.V. bought a gun on September 7, 2003. Two days later he was seen leaving North Crowley High School with Daniel Oltmanns. The next day, Oltmanns's body was found at a construction site with wounds indicating he had been shot in the head.
The following morning, a police detective met with H.V. at the high school and asked him to accompany her downtown for questioning. He agreed and was taken to a juvenile processing center. After receiving the required warnings from a magistrate,[2] H.V. waived his rights and gave a statement admitting he had bought a gun but claiming he had returned it before Oltmanns was shot. The statement was typed up and H.V. signed it, after which he was returned to school.
That afternoon, police officers visited H.V. and his father at their home and asked them to leave the premises pending arrival of a search warrant. They did so, but shortly thereafter H.V. returned, and an off-duty policeman saw him carrying a bloodstained carpet over the back fence of the home. H.V. was arrested on a charge of evidence tampering, and again taken to the juvenile processing facility where he was again given warnings by a magistrate.[3]
When asked whether he wanted to waive his rights and speak to police, H.V. said he wanted to speak to his mother, but was told he could not. H.V. then responded that he "wanted his mother to ask for an attorney." When the magistrate responded that only he (not his mother) could ask for an attorney, H.V. replied, "But, I'm only sixteen." The magistrate then reiterated that only he could ask for an attorney, after which H.V. eventually said he would talk to the police. In a second written statement, H.V. claimed Oltmanns accidentally shot himself with H.V.'s gun, after which H.V. placed him in a bathtub where he bled to death. Based on a drawing by H.V., police recovered the gun from a storm sewer close to H.V.'s home.
Finding that H.V. had invoked his right to counsel during custodial interrogation, the trial court suppressed both H.V.'s second written statement and the gun, and the court of appeals affirmed.[4] The State brings this appeal from a juvenile court order suppressing evidence in a case involving a violent offender.[5] As this question does not turn on an evaluation of demeanor or credibility (as discussed below), we review the question de novo.[6]

II. Jurisdiction of Pretrial Suppression Orders
The parties both assume we have jurisdiction, but that of course does not dispose of the matter.[7] In a single paragraph, the State alleges jurisdiction based on an error of law that requires correction[8] But that jurisdiction does not include *322 most interlocutory appeals,[9] which this pretrial suppression order surely is.[10] Our sister court, the Court of Criminal Appeals, routinely reviews pretrial suppression orders in criminal cases involving adults.[11] But the jurisdictional statute for that Court appears to be broader than ours,[12] and in any event does not expressly limit interlocutory appeals  as ours does.
We have not addressed this question before because this appeal is the first of its kind. Although government appeals of suppression orders are common in criminal cases,[13] similar appeals in juvenile justice cases became available in Texas only in 2003, when the Family Code was amended to allow them in cases involving violent or habitual offenders:
(b) The state is entitled to appeal an order of a court in a juvenile case in which the grand jury has approved of the petition under Section 53.045 [concerning violent or habitual offenders] if the order . . . grants a motion to suppress evidence, a confession, or an admission and if:
(A) jeopardy has not attached in the case;
(B) the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay; and
(C) the evidence, confession, or admission is of substantial importance in the case.[14]
The new statute contemplates review in this Court,[15] but there is no grant of jurisdiction other than as in civil cases generally:
An appeal from an order of a juvenile court is to a court of appeals and the case may be carried to the Texas Supreme Court by writ of error or upon certificate, as in civil cases generally.[16]
*323 In the absence of a specific statutory grant, or of a dissent in the court of appeals,[17] we thus have jurisdiction of this interlocutory appeal only if (as in civil cases generally) the court of appeals opinion "holds differently from a prior decision of another court of appeals or of the supreme court."[18]
This presents two interesting questions here. First, because this is the first appeal of a suppression order in a juvenile justice case, there can be no conflicts if the scope of comparison is limited to just those appeals. But our conflicts jurisdiction is no longer limited to rulings that are "so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other."[19] For cases filed after 2003 (as this one was),[20] a conflict is sufficient for jurisdiction "when there is inconsistency in the[] respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."[21]
Second, our conflicts jurisdiction is generally limited to cases that conflict with "a prior decision of another court of appeals or of the supreme court."[22] Juvenile cases, though classified as civil proceedings, are quasi-criminal in nature and frequently concern constitutional rights and procedures normally found only in criminal law.[23] This Court rarely addresses issues like the one here concerning the warnings required by Miranda v. Arizona;[24] indeed, our citation to that case in this sentence is only the second in the Court's history,[25] compared to almost 2,000 cases citing it by other Texas state courts. Instead, the law governing such issues is generally found in opinions from the United States Supreme Court and the Court of Criminal Appeals  two courts that are not listed in our jurisdictional statute. While this is perhaps a matter for legislative attention, it is not one we can disregard.[26]
Accordingly, we have jurisdiction in this case if the court of appeals has held differently from a prior decision of another court of appeals on an issue that should be clarified to remove uncertainty or unfairness. We believe there is such a conflict. In suppressing the alleged murder weapon for a Miranda violation, the court of appeals *324 held differently from other courts of appeals that have followed Baker v. State, an opinion by the Court of Criminal Appeals.[27] While these other cases did not involve juveniles, the conflict requires clarification for several reasons.
First, rules governing hundreds of out-of-court investigations must provide guidance that is clear and easy for law enforcement personnel to apply;[28] variations between the rules for juveniles and adults, or between the rules in one part of the state and another, may confuse those investigations and jeopardize many future cases. Second, we do not have the luxury of waiting for a final appeal to address these issues; if evidence is improperly suppressed, double jeopardy prevents the state from appealing after a juvenile is acquitted or the case dismissed for lack of admissible evidence.[29] Finally, we are especially cognizant of rendering fairness to the litigants in a case like this involving the most serious of crimes, an alleged murder.
Despite the expansion of our conflicts jurisdiction, we remain reticent to address unsettled questions that may be clarified by developments during trial and thoughtful consideration by several intermediate courts. But the unique circumstances of juvenile proceedings  "an unlikely and sometimes perplexing hybrid of civil and criminal law"[30]  convince us that the conflicts involved here must be clarified "to remove unnecessary uncertainty in the law and unfairness to litigants."[31] Accordingly, we have jurisdiction to consider the State's appeal.

III. Did H.V. Invoke His Right to Counsel?
Miranda v. Arizona requires that suspects in custody be informed before questioning begins of their right to consult with an attorney.[32] If a suspect invokes that right, there can be no further interrogation unless the accused initiates it.[33] If Miranda warnings are not given or a request for counsel is ignored, any subsequent *325 statements by the suspect cannot be introduced at trial during the prosecution's case-in-chief.[34]
These rights apply to juveniles just as they do to adults.[35] Thus, the State concedes in this case that if H.V. properly invoked his right to counsel, the second statement he made thereafter should be suppressed. The only dispute is whether he invoked that right.
In Davis v. United States, the United States Supreme Court established a "bright line" between suspects who might be asking for a lawyer and those who actually do ask for one, holding that only the latter have invoked their right to counsel:
To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. Rather, the suspect must unambiguously request counsel. As we have observed, a statement either is such an assertion of the right to counsel or it is not. Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.[36]
Applying this standard, courts have held that it is not enough for a suspect to say:
 "Maybe I should talk to a lawyer";[37]
 "I might want to talk to an attorney";[38]
 "I think I need a lawyer";[39]
 "Do you think I need an attorney here?";[40] or
 "I can't afford a lawyer but is there anyway I can get one?"[41]
Nor is it enough for a suspect to ask to see someone other than a lawyer, such as a probation officer,[42] or a parent.[43]
At the same time, a suspect does not have to use the precise words "I want a lawyer."[44] Courts have held the right to *326 counsel was invoked when a suspect said:
 he did not "want to make a statement at this time without a lawyer";[45]
 "Uh, yeah. I'd like to do that" in response to a question whether he understood his right to counsel;[46]
 "Maybe I should talk to an attorney by the name of William Evans" and proffering that attorney's business card;[47]
 "Can I get an attorney right now, man?";[48] or
 "I'd just as soon have an attorney `cause, you know  ya'll say there's been a shooting."[49]
While police often carry printed cards to ensure precise Miranda warnings,[50] the public is not required to carry similar cards so they can give similarly precise responses.
The parties here disagree whether Davis requires us to consider H.V.'s circumstances  his youth, Bosnian extraction, and lack of previous experience with police. On this issue, the Court's opinion in Davis gives somewhat mixed signals. On the one hand, the Court said a statement must be "sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."[51] But the Court also said invocation should not turn on the suspect's personal characteristics:
We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who  because of fear, intimidation, lack of linguistic skills, or a variety of other reasons  will not clearly articulate their right to counsel although they actually want to have a lawyer present.[52]
There appear to be no cases answering whether a juvenile's age is among the "variety of other reasons" courts cannot consider when deciding whether an accused has requested counsel. Long before Davis, the Supreme Court held that "a juvenile's age, experience, education, background, and intelligence, and . . . capacity to understand the warnings" must be considered when deciding whether a juvenile waived Miranda rights.[53] As the question here is not whether H.V. waived his right to counsel but whether he invoked it, it is not entirely clear which rule applies.
But we need not decide in this case whether the court of appeals erred in considering H.V.'s age, as we agree with its ultimate conclusion. It is hard to construe H.V.'s statement that he "wanted his mother to ask for an attorney" as anything *327 other than "an expression of a desire for the assistance of an attorney."[54] This is not a case in which H.V. simply wanted to see his mother; the only reason he said he wanted her was for the purpose of getting him an attorney. If he wanted private counsel, his request would have been technically correct, as his age at least hindered if it did not prevent him from doing so himself.[55]
This case is a close one because, when the magistrate followed up by instructing H.V. that only he could ask for an appointed attorney, H.V. never did. But while ambiguous requests for counsel may be clarified by further questioning,[56] unambiguous ones cannot:
No authority, and no logic, permits the interrogator to proceed . . . on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all.[57]
As the objective circumstances surrounding H.V.'s statement rendered it an unambiguous request for an attorney, further "clarification" could not change it.
Accordingly, we agree with the courts below that H.V.'s second statement to the police was properly suppressed.

IV. Should the Gun Have Been Suppressed?
The court of appeals held that suppression of H.V.'s statement also required suppression of the gun as "fruits of the poisonous tree," a legal doctrine first recognized in the context of the Fourth Amendment.[58] But both the United States Supreme Court and the Court of Criminal Appeals have rejected this doctrine in the Fifth Amendment context of physical evidence obtained after failing to give Miranda warnings.[59]
*328 The court of appeals held otherwise, distinguishing cases in which Miranda rights were not read from cases like this one in which an invocation of those rights was ignored.[60] That distinction was expressly rejected by the Court of Criminal Appeals in Baker v. State:
Both Tucker[[61]] and Elstad[[62]] involved the failure to give the required warnings rather than the failure to scrupulously honor warnings given. Neither the Supreme Court nor this Court has addressed whether the Tucker/Elstad rule applies to the fruits of statements made in the latter context. But the principle is the same: mere noncompliance with Miranda does not result in a carryover taint beyond the statement itself. . . . We hold that the Tucker/Elstad rule applies to the failure to scrupulously honor the invocation of Miranda rights. In the absence of actual coercion, the fruits of a statement taken in violation of Miranda need not be suppressed under the "fruits" doctrine. . . . [63]
The court of appeals pointed out that Elstad made a distinction between unread rights and ignored rights in a footnote.[64] But Elstad was not based on that distinction, but on reasoning that Miranda does not involve a constitutional violation.[65] The court of appeals also pointed out that in 2000 the Supreme Court abandoned its characterization of Miranda as a prophylactic rather than a constitutional rule.[66] But the Court held four years later that this did not change the rule that physical evidence was admissible even if gained from questioning that violated Miranda.[67]
More relevant to the question here is a different principle stated by the Supreme Court in Elstad and since: the Self-Incrimination Clause concerns compelled testimony, not physical evidence.[68] The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself;"[69] thus, *329 there can be no Fifth Amendment violation when a person's testimony is excluded.[70] Physical evidence that does not compel a defendant to testify against himself cannot be a violation of the Fifth Amendment rights that Miranda protects, which is precisely what the Supreme Court held in 2004.[71]
The court of appeals expressed concern that suppressing testimonial statements but not physical evidence might encourage police to reject a request for counsel deliberately in the hope of getting something they could use.[72] But evidence obtained through deliberate violations of constitutional rights is usually inadmissible on that basis alone.[73]
In this case, H.V.'s counsel does not argue that his disclosure of the gun's location was involuntary or coerced for any reason other than violation of his Miranda request for counsel. The warnings and invocation of counsel here all occurred in court before a magistrate without police involvement, so there could have been no police coercion.[74] Because violations of Miranda do not justify exclusion of physical evidence resulting therefrom, we hold the courts below erred in excluding the gun that brought about Daniel Oltmanns's death.

* * *
Accordingly, we affirm the judgments below to the extent they exclude H.V.'s second statement to police, reverse the judgments to the extent they exclude the gun found as a result, and remand this case to the trial court for further proceedings consistent with this opinion.
*330 Chief Justice JEFFERSON filed an opinion concurring in part and dissenting in part, in which Justice WAINWRIGHT and Justice GREEN joined, and in which Justice HECHT joined as to Parts I, III and V.
Chief Justice JEFFERSON, joined by Justice WAINWRIGHT and Justice GREEN, and joined by Justice HECHT as to parts I, III, and V, concurring and dissenting.
We cannot construe H.V.'s statement that he "wanted his mother to ask for an attorney" without first addressing the considerable body of precedent on this subject. If we were writing on a clean slate, I would agree that the statement invokes his right to counsel. But the Supreme Court has held that anything short of an unambiguous request will not suffice. Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)("[A] statement either is such an assertion of the right to counsel or it is not."). "Maybe I should talk to a lawyer" is not an unambiguous invocation of right to counsel. Davis, 512 U.S. at 462, 114 S.Ct. 2350. Nor does one invoke the right by saying "I think I need a lawyer," or "I can't afford a lawyer but is there anyway I can get one?" 252 S.W.3d 319, 325 (citing Burket v. Angelone, 208 F.3d 172, 198 (4th Cir.2000); Lord v. Duckworth, 29 F.3d 1216, 1219-21 (7th Cir.1994)). In light of these precedents, H.V.'s statement was ambiguous, and the magistrate properly attempted to clarify H.V.'s wishes. Once she did so, it became clear that H.V. declined counsel. Because the Court concludes otherwise, I respectfully dissent from part III of its opinion.

I
In Flamer v. Delaware, 68 F.3d 710, 725 (3d Cir.1995), the Third Circuit concluded that an adult defendant's "request to call his mother `to inquire about . . . possible representation' . . . was insufficient to trigger Edwards under the Supreme Court's decision in Davis." Then-Judge Alito, writing for the court, concluded:
[T]he [Davis] Court held that Edwards applies only if a defendant `unambiguously' requests counsel. `If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,' Edwards does not come into play. Here, Flamer's request to telephone about possible representation `failed to meet the requisite level of clarity' that Davis demands.
Id. (citations omitted). Although Flamer involved a request made at an arraignment, rather than prior to custodial interrogation, the court's analysis of Davis and Edwards would be equally applicable in either context.
The precedent in this area is muddled,[1] but the Supreme Court's directive seems relatively clear, and lower courts have following *331 suit. It is hard to see a distinction between Flamer's request to call his mother "to inquire about . . . possible representation" and H.V.'s statement that he "wanted his mother to ask for an attorney." Id.; see also Davis, 512 U.S. at 459, 114 S.Ct. 2350; State v. Hyatt, 355 N.C. 642, 566 S.E.2d 61, 71 (2002) (defendant's request to speak to his father and statement that his father wanted him to have an attorney present "[did] not, as a matter of law, constitute an unambiguous request for counsel"). The Court has enumerated examples of statements that courts have held are insufficient to invoke the right to counsel as well as examples of those that sufficed. The statement here is more like the former examples[2] than the latter. As Davis held, interrogations need not cease in the face of an ambiguous or equivocal reference to an attorney that "might" invoke the right to counsel. Davis, 512 U.S. at 459, 114 S.Ct. 2350; see also Dinkins v. State, 894 S.W.2d 330, 351 (Tex.Crim.App. 1995) ("An invocation must be clear and unambiguous; the mere mention of the word `attorney' or `lawyer' without more, does not automatically invoke the right to counsel."). Unless a suspect actually requests an attorney, questioning may continue. Davis, 512 U.S. at 462, 114 S.Ct. 2350.
The magistrate appropriately attempted to clarify H.V.'s ambiguous statement. Davis, 512 U.S. at 461, 114 S.Ct. 2350 (holding that, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney" but declining to adopt a rule requiring clarifying questions). She testified that, before administering the warnings, she asked the investigating officers to leave the room, and her conversation with H.V. was private. She advised him of his rights and "made sure that he understood" them and that he "understood the English language and spoke it and read it. I made sure he understood what he was there for." H.V. said he understood his rights. He then asked to talk to his mother. The magistrate testified:
Magistrate: I explained to him that at that time that we were here in the, we were here down at the facility and that Detective Carroll was asking for him to make a statement and that he had essentially three options at that time: That he could ask for an attorney, that he could make a statement to Detective Carroll, or he could choose not to make any statement.
Ass't D.A.: Did you inform him he had the right to hire an attorney if he chose to do so?
Magistrate: I did.
Ass't D.A.: Did you inform him he had the right to have counsel appointed for him if he couldn't afford one?
Magistrate: I did.
Ass't D.A.: What was his response to this information?
Magistrate: He said he wanted to talk to his mother and wanted her to ask about an attorney.
Ass't D.A.: And what was your response as a magistrate to that question?

*332 Magistrate: I told him that at this time his mother was not present, that we needed to finish up what we were doing there, and that meant that he needed to make a decision about asking for an attorney or making a statement or not making a statement; that those were the three things at that point that we could take care of at that point.
. . .
Ass't D.A.: Knowing that, what did you do after the Respondent asked about talking to his mother about an attorney?
Magistrate: I told him, we also had a brief conversation, he asked, well, I explained to him that if he chose not to make a statement at that time, that was fine, that he was currently being held in custody for tampering with physical evidence, and that he was being under investigation for murder, and that if he wanted to speak to his mother, that he would be taken back down to the Juvenile facility at that time. I said, I don't know what timeframe would be involved as far as your being able to see your mother.
Ass't D.A.: Once you briefed him on those rights, what was his response?
Magistrate: Ass't D.A.: That he wanted to make a statement to Detective Carroll.
Ass't D.A.: Did he mention anything about his age?
Magistrate: He did say I'm only 16, and I said, I understand that, H., but I think you're very well-educated and articulate, and you understand everything, and if you want to ask for an attorney, I think you can do that. I mean, you have the right to do that for yourself.
. . .
Ass't D.A.: And what was his response?
Magistrate: That he would talk to Detective Carroll.
Ass't D.A.: And were you fully convinced that that was his intention at that time?
Magistrate: If I hadn't been fully convinced that that was what he wanted, I wouldn't have let him do it.
Her notes reflected the following:
[H.] was very articulate and appeared well-educated. He was very aware of his circumstances and the charges. After reading the first mag warning, I explained that he could ask for an attorney, choose not to make a statement, or choose to speak to Detective Carroll. He stated he wanted to call his mother. I told him that at this time that was not an option. He said he wanted his mother to ask for an attorney. I explained to him that he would have to be the one to ask for an attorney. He stated, but I'm only 16. I said yes, but if he wanted an attorney, he would have to ask for one. I again told him he had three options: Ask for an attorney, make a statement to Detective Carroll, or not to make a statement. At that time, he said he would speak to Detective Carroll.
Thus, by the end of the exchange, H.V. made it clear that he wanted to speak to law enforcement officers and thereafter gave a statement. He again met privately with the magistrate, who read his statement and listened as H.V. subsequently read it aloud. He made a single correctionadding the word "shoes" where it had been omittedand signed the statement. At no time during this process did he unambiguously invoke his right to counsel.

II
H.V. admits that he knew of his rights, having been advised of them earlier in the day, but contends that he did not know *333 how to invoke them. He urges the Court to examine the "totality of the circumstances," including his age, when deciding whether his requesting his mother to seek counsel should be construed as his own request. The Court, however, sidesteps the issue, noting only that because it agrees with the court of appeals' ultimate conclusion, it "need not decide in this case whether the court of appeals erred in considering H.V.'s age." By failing to decide whether H.V.'s age may be considered, however, the Court does a disservice both to H.V. and to future litigants: the Court does not explain why taking H.V.'s age into account would apparently not affect the outcome here,[3] nor does the Court provide any guidance to courts grappling with this issue in future cases.
While I agree that it is "not entirely clear which rule applies," 252 S.W.3d at 326, I would hold that a juvenile's age may be taken into account when deciding whether he invoked his right to counsel. In Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Supreme Court held that courts evaluating a juvenile's waiver of his Miranda rights must examine the totality of the circumstances, including a "juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."
Davis, decided after Fare, established an objective test for invoking those rights. Davis, 512 U.S. at 459, 114 S.Ct. 2350. One of the driving forces behind Davis's objective test, however, was the desire to provide a clear rule for police officers during interrogations. The Supreme Court balanced the Edwards test with an adult suspect's invocation of his rights and concluded:
In considering how a suspect must invoke the right to counsel, we must consider the other side of the Miranda equation: the need for effective law enforcement. Although the courts ensure compliance with the Miranda requirements through the exclusionary rule, it is police officers who must actually decide whether or not they can question a suspect. The Edwards rulequestioning must cease if the suspect asks for a lawyerprovides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.
Id. at 461, 114 S.Ct. 2350. But under Texas law, magistrates, not law enforcement officers, give Miranda warnings to juveniles.[4] TEX. FAM.CODE § 51.095. To be *334 admissible in evidence, statements given by juveniles must be signed in the presence of the magistrate, generally without any law enforcement officers or prosecuting attorneys present.[5]Id. § 51.095(a)(1)(B)(i). In contrast to warnings administered by police officers during the heat of interrogation, then, juvenile warnings administered before police questioning ever begins, by an experienced magistrate who is obviously aware of the juvenile's age, do not raise the same concerns cited by the Davis court. In this context, a magistrate's consideration of a suspect's age would not "unduly hamper[ ] the gathering of information." Davis, 512 U.S. at 461, 114 S.Ct. 2350.
Moreover, Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004), in which the Supreme Court held that a suspect's age or experience need not be considered in determining whether he is in custody, does not necessarily foreclose consideration of a juvenile's age when determining whether he invoked his right to counsel. Yarborough did not overrule Fare, and at least one Justice who joined Yarborough noted that age could be considered as part of the objective custody inquiry.[6]See Yarborough, 541 U.S. at 669, 124 S.Ct. 2140 (O'Connor, J., concurring) (noting that, despite objective nature of inquiry, "[t]here may be cases in which a suspect's age will be relevant to the `custody' inquiry under Miranda"); see also People v. Roquemore, 131 Cal.App.4th 11, 31 Cal.Rptr.3d 214, 223 (2005) (applying Fare factors but nonetheless concluding that eighteen-year-old's statement "Can I call a lawyer or my mom to talk to you?" was not an unambiguous request for counsel); Dinkins, 894 S.W.2d at 351 (applying Davis but nonetheless concluding that "[w]hen reviewing alleged invocations of the right to counsel, we typically look at the totality of the circumstances"). While Davis, silent on whether Fare's factors should come into play, gives somewhat mixed signals on this point, I would hold that age should be considered when evaluating a juvenile's invocation of his right to counsel, particularly in light of the statutory warning procedure required for juveniles in Texas.

III
But even if age is a pertinent consideration, the circumstances of this case H.V.'s youth, his Bosnian extraction, and his lack of prior experience with the policedo not compel a different result. The magistrate testified that H.V., then three months shy of his seventeenth birthday, was "very articulate and appeared well educated." Cf. Yarborough, (O'Connor, J., concurring) (noting that "17 1/2-year-olds vary widely in their reactions to police questioning, and many can be expected to behave as adults"). She noted that he read and understood the English language and was a junior at a local high school. He had earlier that day been taken into custody for another interrogation, *335 and, after having his rights explained to him at that time, chose to waive them. In this case, then, none of these factors weigh in favor of a conclusion that H.V. invoked his right to counsel.
One can imagine circumstances, however, in which a defendant's youth would be significant. Here, H.V. was near majority. What if he had been six years old? See Barry C. Feld, Juveniles' Competence to Exercise Miranda Rights: An Empirical Study of Policy and Practice, 91 MINN. L.REV. 26, 99 (2006) (noting that while juveniles aged sixteen and older exhibited an understanding of Miranda warnings on a par with adults, juveniles under fifteen frequently misunderstood warnings). Ignoring this fact would lead to the ironic result that the younger the accused, the less likely he would be to invoke his constitutional rights. Davis drew a "bright line" between suspects who might be asking for a lawyer and those who actually do, but that test leaves room for consideration of a juvenile's age.

IV
Finally, both H.V.[7] and the Court erroneously conclude that H.V.'s age "at least hindered if it did not prevent him from [hiring private counsel] himself." 252 S.W.3d at 327. We have long recognized (and never disavowed)[8] that minors may retain counsel in criminal proceedings, and such contracts are neither void nor voidable. Askey v. Williams, 74 Tex. 294, 11 S.W. 1101, 1101 (1889) ("The contracts of an infant for necessaries are neither void nor voidable, and we are of opinion that the services of an attorney should be held necessary to an infant, where he is charged by an indictment with crime. His life or his liberty and reputation are at stake, and it would be unreasonable to deny him the power to secure the means of defending himself."); see also Johnson v. Newberry, 267 S.W. 476, 478 (Tex. Comm'n App.1924, judgm't adopted) (noting that "`reasonable attorney fees in defense of a criminal action brought against an infant are necessaries'" but if agreed-upon price is excessive, contract is enforceable only to the extent of "`a just compensation for the necessaries received by him'") (quoting Askey, 11 S.W. at 1101). In any event, it is not necessary to revisit our established caselaw, because the particular warning given here advised H.V. (as mandated by the Family Code) that he had a right to appointed counsel if he was "unable to employ an attorney." TEX. FAM. CODE § 51.095. Thus, even if H.V. believed that his age prevented him from hiring private counsel himself, he was told that he could speak with a court-appointed attorney.

*336 V
I agree that we have jurisdiction over this case and join parts I and II of the Court's opinion. I would not reach the suppression issue decided by the Court in part IV. Because H.V. did not unambiguously invoke his right to counsel, I would reverse the court of appeals' judgment suppressing the statement and the gun and therefore dissent from that part of the Court's judgment that holds otherwise.
NOTES
[1] See TEX. FAM.CODE § 56.03(b)(5).
[2] See id. § 51.095(a)(1) (providing that children be warned of their rights by a magistrate); see also In re R.J.H., 79 S.W.3d 1, 4 (Tex.2002) ("The Texas Family Code provides that a juvenile can waive his rights once he is in custody only if joined by his attorney or if done in the presence of a magistrate.").
[3] The State concedes that if H.V.'s statements to the magistrate constitute an invocation of his right to counsel, it is immaterial that it was not also made to police.
[4] 179 S.W.3d 746. The trial court denied suppression on "[a]ll other grounds."
[5] See TEX. FAM.CODE §§ 56.03(b)(5), 53.045.
[6] See In re R.J.H., 79 S.W.3d at 6.
[7] See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 358 (2004) ("[A] court is obliged to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.").
[8] See TEX. GOV'T CODE § 22.001(a)(6).
[9] Id. at § 22.225(b)(3) (providing that generally "a judgment of a court of appeals is conclusive on the law and facts, and a petition for review is not allowed to the supreme court . . . from other interlocutory appeals that are allowed by law").
[10] See United States v. Loud Hawk, 474 U.S. 302, 307 n. 8, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (describing similar appeal by federal prosecutor under 18 U.S.C. § 3731 as interlocutory); see also BLACK'S LAW DICTIONARY 106 (8th ed.2004) ("interlocutory appeal. An appeal that occurs before the trial court's final ruling on the entire case.").
[11] See, e.g., State v. Stevens, 235 S.W.3d 736 (Tex.Crim.App.2007); State v. Dixon, 206 S.W.3d 587 (Tex.Crim.App.2006); State v. Cullen, 195 S.W.3d 696 (Tex.Crim.App.2006); Kothe v. State, 152 S.W.3d 54 (Tex.Crim.App. 2004); State v. Kurtz, 152 S.W.3d 72 (Tex. Crim.App.2004); State v. Steelman, 93 S.W.3d 102 (Tex.Crim.App.2002); Martinez v. State, 91 S.W.3d 331 (Tex.Crim.App.2002); State v. Perez, 85 S.W.3d 817 (Tex.Crim.App.2002); State v. Scheineman, 77 S.W.3d 810 (Tex. Crim.App.2002).
[12] See TEX.CODE CRIM. PROC. art. 4.04, § 2 ("In addition, the Court of Criminal Appeals may, on its own motion, with or without a petition for such discretionary review being filed by one of the parties, review any decision of a court of appeals in a criminal case.").
[13] See State v. Medrano, 67 S.W.3d 892, 897-99 (Tex.Crim.App.2002) ("All fifty states, as well as the District of Columbia, have provisions permitting the government to appeal adverse rulings of a question of law. Many of those states . . . permit the State to appeal any pretrial ruling suppressing evidence if that evidence is likely to be outcome determinative. Other states explicitly grant the prosecution a broad right to appeal any pretrial suppression, evidentiary or other legal ruling which is likely to determine the outcome of the case.") (citations omitted).
[14] TEX. FAM.CODE § 56.03(b); see Act of June 2, 2003, 78th Leg., R.S., ch. 283, § 25, 2003 Tex. Gen. Laws 1221, 1228 (eff.Sept.1, 2003).
[15] TEX. FAM.CODE § 56.03(i) ("The Texas Rules of Appellate Procedure apply to a petition by the state to the supreme court for review of a decision of a court of appeals in a juvenile case.").
[16] Id. at § 56.01(a).
[17] The State reports that Justice Holman dissented in an original opinion in this case, but apparently withdrew that dissent on rehearing as the opinion before us is unanimous.
[18] TEX. GOV'T CODE § 22.225(c).
[19] Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 701 (Tex.2003).
[20] Oltmanns died September 11, 2003, and all proceedings herein occurred thereafter. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.02, 2003 Tex. Gen. Laws 847, 848 (expanding conflicts jurisdiction for cases filed after September 1, 2003).
[21] TEX. GOV'T CODE § 22.225(c), (e).
[22] Id.
[23] See, e.g., In re R.J.H., 79 S.W.3d 1 (Tex. 2002) (addressing whether juvenile's oral confession violated Miranda rights); In re D.A.S., 973 S.W.2d 296 (Tex.1998) (addressing whether Anders procedures applied to juvenile appeals).
[24] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[25] See also In re R.J.H., 79 S.W.3d at 3 n. 3.
[26] See TEX. CONST. art. V, § 1 ("The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof. . . ."). Because there are conflicts with Texas courts of appeals' opinions, we do not reach the question whether interlocutory appeals are within our previous holdings that conflicts with opinions of the United States Supreme Court are sufficient for jurisdiction. Eichelberger v. Eichelberger, 582 S.W.2d 395, 400 (Tex. 1979); see also Mayhew v. Caprito, 794 S.W.2d 1, 2 (Tex. 1990); U.S. CONST. art. VI, cl. 2; TEX. CONST. art. I, § 1.
[27] 956 S.W.2d 19, 23 (Tex.Crim.App.1997); see Garmon v. State, No. 07-05-0298-CR, 2007 WL 148836, at *1 n. 2 (Tex.App.-Amarillo Jan. 22, 2007, pet. ref'd) (noting conflict between H.V. and Baker); Rodriguez v. State, 191 S.W.3d 428, 456 (Tex.App.-Corpus Christi 2006, pet. ref'd); Brown v. State, No. 07-03-00347-CR, 2005 WL 1742984, at *5 (Tex. App.-Amarillo July 25, 2005, no pet.); Marsh v. State, 115 S.W.3d 709, 715 (Tex.App.-Austin 2003, pet. ref'd). Of these, only those prior to the decision here establish conflicts jurisdiction. See TEX. GOV'T CODE § 22.225(c) ("This section does not deprive the supreme court of jurisdiction of a civil case . . . in which one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court. . . .") (emphasis added); Collins v. Ison-Newsome, 73 S.W.3d 178, 180 (Tex.2001).
[28] Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).
[29] Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); Breed v. Jones, 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); In re J.R.R., 696 S.W.2d 382, 384 (Tex. 1985).
[30] State v. C.J.F., 183 S.W.3d 841, 847 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).
[31] TEX. GOV'T CODE § 22.225(c), (e).
[32] 384 U.S. 436, 469-70, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[T]he right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. . . . Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires."); see U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself. . . . ").
[33] Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
[34] Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); Edwards, 451 U.S. at 487, 101 S.Ct. 1880; Miranda, 384 U.S. at 479, 86 S.Ct. 1602.
[35] In re R.J.H., 79 S.W.3d 1, 4 (Tex.2002) (citing In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).
[36] Davis, 512 U.S. at 458-59, 114 S.Ct. 2350 (internal quotations and citations omitted) (italics in original).
[37] Id.; accord, Dinkins v. State, 894 S.W.2d 330, 352 (Tex.Crim.App. 1995) ("Maybe I should talk to someone").
[38] United States v. Zamora, 222 F.3d 756, 765-66 (10th Cir.2000).
[39] Burket v. Angelone, 208 F.3d 172, 198 (4th Cir.2000).
[40] Mueller v. Angelone, 181 F.3d 557, 573-74 (4th Cir.1999); accord, Soffar v. Cockrell, 300 F.3d 588, 595 (5th Cir.2002); Diaz v. Senkowski, 76 F.3d 61, 63-65 (2d Cir.1996).
[41] Lord v. Duckworth, 29 F.3d 1216, 1219-21 (7th Cir.1994); accord, Soffar, 300 F.3d at 595.
[42] Fare v. Michael C., 442 U.S. 707, 724, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
[43] Dewberry v. State, 4 S.W.3d 735, 747 (Tex. Crim.App.1999); Randall v. State, 712 S.W.2d 631, 632 (Tex.App.-Beaumont 1986, pet. ref'd).
[44] Montoya v. Collins, 955 F.2d 279, 283 (5th Cir.1992) ("This holding does not require a defendant to utter the magic words, `I want a lawyer,' in order to assert his right to counsel."); Dewberry, 4 S.W.3d at 747 n. 9 ("There are no magic words required to invoke an accused's right to counsel.").
[45] United States v. Johnson, 400 F.3d 187, 195 (4th Cir.2005).
[46] Smith v. Illinois, 469 U.S. 91, 93, 99-100, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
[47] Abela v. Martin, 380 F.3d 915, 919, 926-27 (6th Cir.2004).
[48] Alvarez v. Gomez, 185 F.3d 995, 998 (9th Cir.1999).
[49] Kyger v. Carlton, 146 F.3d 374, 376, 379 (6th Cir.1998).
[50] See, e.g., Oregon v. Elstad, 470 U.S. 298, 314-15 & n. 4, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); Arabzadegan v. State, 240 S.W.3d 44, 46 (Tex.App.-Austin 2007, pet. ref'd); Fineron v. State, 201 S.W.3d 361, 364 (Tex.App.-El Paso 2006, no pet.).
[51] Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (emphasis added).
[52] Id. at 460, 114 S.Ct. 2350.
[53] Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); see Delao v. State, 235 S.W.3d 235 (Tex.Crim.App.2007).
[54] Davis, 512 U.S. at 459, 114 S.Ct. 2350.
[55] See In re D.A.S., 951 S.W.2d 528, 529 (Tex.App.-Dallas 1997)("[A] minor does not have the legal capacity to employ an attorney. . . ."), rev'd on other grounds, 973 S.W.2d 296 (Tex. 1998); accord, Lee v. Colorado City, Texas, No. 04-CV-00028, 2004 WL 524923 *2 n. 2 (N.D.Tex. Mar. 4, 2004); Francine v. Dallas Indep. Sch. Dist., No. 02-CV-1853, 2003 WL 21501838, at *2 (N.D. Tex. June 25, 2003); Byrd v. Woodruff, 891 S.W.2d 689, 704 (Tex.App.-Dallas 1994, writ denied); In re Martel, No. 12-06-00397-CV, 2007 WL 43616, at *3 (Tex.App.-Tyler Jan.8, 2007, orig. proceeding); Coleson v. Bethan, 931 S.W.2d 706, 712 (Tex.App.-Fort Worth 1996, no writ); see also Dairyland County Mut. Ins. Co. of Tex. v. Roman, 498 S.W.2d 154, 158 (Tex. 1973) (holding contract of a minor, while not void, is voidable at minor's election). The dissent cites a nineteenth-century case for the rule that a minor can employ an attorney as a "necessary" because "it would be unreasonable to deny him the power to secure the means of defending himself." Askey v. Williams, 74 Tex. 294, 11 S.W. 1101, 1101 (1889). We need not decide today whether that case survives the rule announced 78 years later that juveniles have a constitutional right to counsel, see In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); we merely note that it remains the duty of a parent in the first instance to pay for such necessaries. See TEX. FAM.CODE § 151.001(c) ("A parent who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed.").
[56] Davis, 512 U.S. at 453, 114 S.Ct. 2350.
[57] Smith v. Illinois, 469 U.S. 91, 98-99, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
[58] Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Kothe v. State, 152 S.W.3d 54, 60 (Tex.Crim. App.2004); see U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . ").
[59] United States v. Patane, 542 U.S. 630, 634, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion); id. at 645, 124 S.Ct. 2620 (Kennedy, J., concurring); Baker v. State, 956 S.W.2d 19, 23-24 (Tex.Crim.App. 1997).
[60] 179 S.W.3d 746, 758.
[61] Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).
[62] Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).
[63] Baker, 956 S.W.2d at 23-24.
[64] See Elstad, 470 U.S. at 312-13 n. 3, 105 S.Ct. 1285 (stating that as current case involved mere failure to give Miranda warnings, "[l]ikewise inapposite are the cases the dissent cites concerning suspects whose invocation of their rights to remain silent and to have counsel present were flatly ignored while police subjected them to continued interrogation"). But see Oregon v. Hass, 420 U.S. 714, 723, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (refusing to distinguish between unread rights and ignored rights when allowing statements that violate Miranda to be used for impeachment).
[65] See Elstad, 470 U.S. at 306-07, 105 S.Ct. 1285 ("[A] procedural Miranda violation differs in significant respects from violations of the Fourth Amendment. . . . The Miranda exclusionary rule, however, serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself . . . Miranda's preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm.").
[66] See Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("In sum, we conclude that Miranda announced a constitutional rule that Congress may not supersede legislatively.").
[67] See United States v. Patane, 542 U.S. 630, 643, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion); id. at 645, 124 S.Ct. 2620 (Kennedy, J., concurring).
[68] Elstad, 470 U.S. at 304, 105 S.Ct. 1285 ("The Fifth Amendment, of course, is not concerned with nontestimonial evidence.").
[69] U.S. CONST., amend. V (emphasis added).
[70] Patane, 542 U.S. at 643, 124 S.Ct. 2620 (plurality opinion) ("Introduction of the nontestimonial fruit of a voluntary statement, such as respondent's Glock, does not implicate the Self-Incrimination Clause. The admission of such fruit presents no risk that a defendant's coerced statements (however defined) will be used against him at a criminal trial."); id. at 645, 124 S.Ct. 2620 (Kennedy, J., concurring) ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself.").
[71] Id. at 634, 124 S.Ct. 2620.
[72] 179 S.W.3d 746, 763; see also Patane, 542 U.S. at 645, 124 S.Ct. 2620 (Souter, J., dissenting) ("The issue actually presented today is whether courts should apply the fruit of the poisonous tree doctrine lest we create an incentive for the police to omit Miranda warnings.").
[73] Missouri v. Seibert, 542 U.S. 600, 620-21, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (Kennedy, J., concurring); Patane, 542 U.S. at 639, 124 S.Ct. 2620 (plurality opinion) (stating that fruits "of actually compelled testimony" must be excluded); Oregon v. Hass, 420 U.S. 714, 723, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) ("One might concede that when proper Miranda warnings have been given, and the officer then continues his interrogation after the suspect asks for an attorney, the officer may be said to have little to lose and perhaps something to gain by way of possibly uncovering impeachment material. . . . If, in a given case, the officer's conduct amounts to an abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness."); cf. Fellers v. United States, 540 U.S. 519, 524, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004) (requiring suppression of information gained by deliberate violation of suspect's Sixth Amendment right to counsel). But see Moran v. Burbine, 475 U.S. 412; 423-24, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("Granting that the `deliberate or reckless' withholding of information is objectionable as a matter of ethics, such conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.").
[74] See TEX. FAM.CODE § 51.095(a)(1) (providing for admissibility of statements by a child when a magistrate "has examined the child independent of any law enforcement officer or prosecuting attorney").
[1] For example, one court concluded that "Can I ask for a lawyer now?" was not an unambiguous request for counsel, while another held that "Can I call my attorney?" was. Compare Loredo v. State, 130 S.W.3d 275, 284-85 (Tex.App.-Hous. [14 Dist.] 2004, pet. ref'd) (deciding that party's "question about a lawyer was not an unambiguous invocation of his right to counsel"), certificate of appealability denied, Loredo v. Quarterman, No. H-06-2138, 2007 WL 2461854, 2007 U.S. Dist. LEXIS 63208, 49-51 (S.D.Tex. Aug.23, 2007) (concluding, on habeas review, that Texas state court's decision did not violate "established Supreme Court precedent or constitute[ ] an unreasonable determination of the facts in light of the evidence presented in state court") with United States v. de la Jara, 973 F.2d 746, 752 (9th Cir.1992) (holding that question "clearly invoked the right to counsel").
[2] To those, I would add: Clark v. Murphy, 331 F.3d 1062, 1066 (9th Cir.2003) (holding that "I think I would like to talk to a lawyer" was ambiguous; thus, on habeas review, Arizona court's determination neither violated Supreme Court precedent nor was objectively unreasonable); Diaz v. Senkowski, 76 F.3d 61, 63 (2d Cir.1996) (concluding that "I think I want a lawyer" and "[d]o you think I need a lawyer" were ambiguous within the meaning of Davis); United States v. Ogbuehi, 18 F.3d 807, 813 (9th Cir.1994) (noting that defendant's question, "Do I need a lawyer" or "Do you think I need a lawyer" did not "rise to the level of even an equivocal request for an attorney").
[3] The Court's conclusion that H.V.'s age "at least hindered if it did not prevent him" from retaining private counsel suggests that, in fact, the Court does take his age into account to conclude that he invoked his right to counsel. 252 S.W.3d at 327.
[4] Thus, the standard must be one of a "reasonable magistrate," not a "reasonable police officer." That is, the Davis test for juveniles in Texas must be whether the statement is "sufficiently clear[] that a reasonable [magistrate] in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459, 114 S.Ct. 2350.
[5] A magistrate may require the presence of a bailiff or a law enforcement officer if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court personnel, provided that the bailiff or law enforcement officer does not carry a weapon in the presence of the child. TEX. FAM.CODE § 51.095(a)(1)(B)(i).
[6] The Fare court explained at length why, contrary to the California Supreme Court's conclusion, a request to speak to his probation officer did not invoke a juvenile's right to counsel; if the juvenile's age had been irrelevant to the inquiry, certainly the Supreme Court would have said so. Fare, 442 U.S. at 723-24, 99 S.Ct. 2560 ("[S]ince a probation officer does not fulfill the important role in protecting the rights of the accused juvenile that an attorney plays, we decline to find that the request for the probation officer is tantamount to the request for an attorney.") (emphasis added).
[7] H.V. asserts that his statement to the magistrate was "an effort to explain . . . that, while he desire[d] counsel, he [was] incapable of obtaining an attorney being merely a sixteen year old."
[8] It is curious that the Court, citing only court of appeals and federal district court opinions, questions whether Askey is still good law. Not only is Askey precedent from our Court, but we reaffirmed the rule thirty-five years later in Johnson v. Newberry, and leading commentators cite Askey as accurately stating the Texas rule. See WILLIAM V. DORSANEO III, ET AL., 14 TEXAS LITIGATION GUIDE § 210A.04 (2007); 1 BARRY P. HELFT & JOHN M. SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE § 1.101 (2008); JOHN D. MONTGOMERY, ET AL., 3 TEXAS FAMILY LAW: PRACTICE & PROCEDURE U2.03 (2d ed.2007). And the venerable policy the rule promotes is as forceful today as it was in 1889. Thus, it is unclear why a minor's constitutional right to counsel, recognized by the Supreme Court in 1967, would weaken, rather than strengthen this rule. Nor is this tenet affected by a parent's duty to pay for such necessaries. See JOSEPH M. PERILLO, 7 CORBIN ON CONTRACTS § 27.8 (rev. ed.2002) (noting that "[a]n infant is liable in quasi contract for necessaries furnished the infant" and "[t]he basis of this liability is thus considerably different from the liability of parents for necessaries furnished their children").