YVONNE RODRIGUEZ, Justice,
dissenting.
Concluding that J.T.M. was in custody, I would reverse and remand, so therefore, respectfully dissent.
Critical to the analysis, is J.T.M.’s compliance to Officer Mata’s order to approach the patrol car. J.T.M. complied and voluntarily submitted to a pat down for officer safety. Officer Mata felt no weapons on the male he patted down, later identified as J.T.M.
Officer Hernandez then asked J.T.M. how old he was. J.T.M. answered he was 16 years old. After questioning J.T.M.’s friend, Officer Hernandez asked both if they had any drugs on them. In response, J.T.M. admitted that he had “some weed[,]” and removed seven bags of marihuana from the left pocket of his pants and put them on the hood of the patrol car. Officer Hernandez immediately secured the marihuana and Officer Mata handcuffed J.T.M., informing him he was under arrest and placing him in the back of the patrol car.
Under Dowthitt, J.T.M. was in custody under the fourth scenario because a reasonable 16 year-old in J.T.M.’s position would have believed he was not free to leave when Officer Hernandez asked him if he had drugs.
First, there was probable cause to issue a citation to J.T.M. for curfew and alcohol violations once Officers Hernandez and Mata ascertained that he was a juvenile. See Tex. Aloo. Bev.Code Ann. § 106.05 (West Supp.2012) (a minor commits an offense if he possesses an alcoholic beverage); MuniCipal Code City of El Paso, Texas, Title 10, § 10.20.010 et seq. (2018)(prohibiting youths under the age of seventeen from public places within the City between the hours of 11 p.m. and 6 a.m.); Vasquez v. State, 739 S.W.2d 37, 44 (Tex.Crim.App.1987) (holding that a law enforcement officer may make a warrant-less arrest if he has knowledge based upon reasonably trustworthy information that would warrant a reasonable and prudent person in believing that the suspect has committed or is committing a crime).
Second, neither Officer Hernandez nor Officer Mata told J.T.M. he was free to leave. In fact, Officer Hernandez testified that J.T.M. was not free to leave.
Third, Officers Hernandez and Mata never specifically told J.T.M that probable cause existed to issue a citation for curfew and alcohol violations, however, along with J.T.M.’s admission that he was a juvenile constituted manifestation of probable cause to cite him. See Fuller v. State, No. 02-06-00382-CR, 2008 WL 45794, *3 (Tex. App.-Fort Worth Jan. 3, 2008, no pet.)(mem. op., not designated for publication) (“Although the officers never specifically told Fuller that probable cause existed, Fuller’s admission of ownership of the marijuana did constitute manifestation of probable cause.”); In re D.A.R., 73 S.W.3d at 511 (“And certainly, after appellant made his confession, he would have realized Officer Gonzalez’s probable cause to arrest him, given that the incriminating nature of his statement would substantiate Officer Gonzalez’s probable cause.”).
Fourth and finally, this manifestation of probable cause, when combined with the circumstances associated with ' J.T.M.’s *467 questioning, would have led a reasonable 16-year-old in J.T.M.’s position to believe that he was under restraint to the degree associated with arrest. Officers Hernandez and Mata, who were in full uniform and carrying their sidearms, batons, Ta-sers, and handcuffs, engaged in a show of force when they approached J.T.M and his friend. They ordered J.T.M. and his friend to come to the patrol car and patted both of them down. Moreover, while questioning J.T.M., Officers Hernandez and Mata “made clear” to J.T.M. that “he wasn’t free to leave, he wasn’t going anywhere.”
In light of these circumstances, J.T.M. was in custody when he admitted that he had “some weed” in response to Officer Hernandez’s questioning. Although the events occurred in quick succession, there was sufficient time for Officers Mata and Hernandez to realize that J.T.M. came into custody and should have been given the Miranda warnings by a magistrate as required by Section 51.095 of the Texas Family Code. Yet, no warnings were issued to J.T.M. and instead he was asked if he had drugs. Prior to Officer Hernandez’ questioning, he knew J.T.M. was a juvenile, had been compliant with all the officer’s requests, and was not in possession of any weapons.
The State contends J.T.M. was not in custody, but rather the subject of an investigative detention, and that, once the purpose of the detention was satisfied, Officers Hernandez and Mata did not unlawfully seize J.T.M by asking him if he possessed illegal contraband. We do not dispute that Officers Hernandez’s and Mata’s actions did not amount to an unlawful seizure under the Fourth Amendment. See Strauss v. State, 121 S.W.3d 486, 491 (Tex.App.-Amarillo 2003, pet. refd)(once the purpose of a traffic stop has been effectuated, the officer may ask the driver if he possesses illegal contraband and solicit voluntary consent to search the vehicle); James v. State, 102 S.W.3d 162, 173 (Tex.App.-Fort Worth 2003, pet. refd)(merely requesting consent to search does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask). But an investigative detention may nevertheless evolve into custodial interrogation. Dowthitt, 931 S.W.2d at 255. As established above, this is exactly what occurred.
J.T.M. was detained temporarily to investigate possible alcohol and curfew violations. Once J.T.M admitted he was a minor, probable cause arose to arrest him for those offenses. At no point thereafter was J.T.M. told that he was free to leave and, in fact, was made to understand that “he wasn’t free to leave, he wasn’t going anywhere.” Given the nature of the restraint and the show of force employed by Officers Hernandez and Mata in restraining J.T.M., a reasonable juvenile of the same age would have considered himself in custody. J.T.M. has thus carried his burden of establishing that he was in custody when he made his inculpatory statement and placed the marihuana on the hood of the patrol car. See Herrera, 241 S.W.3d at 526. Because J.T.M. was in custody and he was not given the Miranda warnings required by Section 51.095 of the Texas Family Code, we conclude the trial court erred in denying his motion to suppress both his oral statement to police officers that he had marihuana and the marihuana.
The majority concludes that J.T.M. was not in custody when Officer Hernandez asked him if he had any drugs and that, even had J.T.M. been in custody, the marihuana itself would not have been suppressed as “fruit of the poisonous tree.” Given the current state of the law, the majority is likely correct. See e.g., In re *468 A.J., 63 A.3d 562, 564-65, 567-69 (D.C. 2013) (concluding that trial court erred in finding that juvenile was in custody where police officer encountered juvenile and companion on street, suspected them of being truant, and juvenile, in response to officer’s question whether he had anything on him that the officer needed to know about, reached inside his jacket packet, said, “yeah, I got this,” and pulled out a black BB gun); United States v. Patane, 542 U.S. 630, 636-37, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004) (plurality op.)(holding that the rule of Miranda does not require the suppression of physical evidence obtained after failing to read Miranda warnings); In re H.V., 252 S.W.3d 319, 327-29 (Tex.2008) (holding that the rule of Miranda does not require the suppression of physical evidence obtained after ignoring Miranda right to counsel). But by affirming the trial court’s order denying J.T.M.’s motion to suppress his statements and the marihuana, the majority is also encouraging the police to use improper “fishing expeditions” when questioning juveniles. Because I believe this Court should forbid rather than permit this type of behavior, I respectfully dissent.
I recognize that it was legally permissible for Officer Hernandez to briefly detain J.T.M. and ask him questions to confirm or dispel his suspicion that J.T.M. was engaged in delinquent conduct. Officer Hernandez rightfully inquired as to J.T.M.’s age in performing his investigatory detention, and J.T.M’s response confirmed Officer Hernandez’s suspicion that J.T.M. was a minor in possession of alcohol. But in the absence of a basis to believe that J.T.M. was engaged in further delinquent conduct, J.T.M.’s self-incriminating response did not justify further questioning intended to elicit more incriminating responses and evidence. While that course of conduct may be tolerated when adult suspects are subject to investigatory detentions, it should not be when juveniles are in the crosshairs. This is because “children are fundamentally different from adults when it comes to understanding and invoking their rights.” Benjamin E. Friedman, Protecting Truth: An Argument for Juvenile Rights and a Return to In re Gault, 58 UCLA L.Rev. Disc. 165, 176 (2011) (internal citations omitted).
Given the physiology of brain development and growth, age — more so than intelligence — is the primary factor in determining whether a child has the capacity to reason and to make informed decisions. Id. at 176-78. In general, the younger the child, the less likely he is to possess such attributes. Id.; Barry C. Feld, Juveniles’ Competence to Exercise Miranda Rights: 1 An Empirical Study of Policy and Practice, 91 Minn. L.Rev. 26, 39 (2006)(noting that while juveniles aged sixteen and older exhibited an understanding of Miranda warnings on a par with adults, juveniles younger than fifteen frequently misunderstood warnings). Here, J.T.M. was sixteen years of age, and he may well have had the capacity to make decisions on a par with an adult. The record, however, sheds no light on J.T.M.’s competence or capacity. But
“[e]ven if an adolescent has an ‘adult-like’ capacity to make decisions, the adolescent’s sense of time, lack of future orientation, labile emotions, calculus of risk and gain, and vulnerability to pressure will often drive him or her to make very different decisions than an adult would in similar circumstances.” The difference becomes more apparent in situations of stress, such as police interrogations or court proceedings. Immaturity can produce the same lack of capacity as mental illness, which means that many juveniles are in fact legally incompetent. *469 Friedman, Protecting Truth, 58 UCLA L.Rev. Disc, at 177, internal citations omitted.
The law recognizes that, in many contexts, children are legally incompetent and thus accord them special protections in deference to their youth. For example, this Court has been vigilant in safeguarding the claims of injured minors. See, e.g., Maes v. El Paso Orthopaedic Surgery Group, P.A., 385 S.W.3d 694, 698 (Tex.App.-El Paso 2012, pet. denied) (“The claims of a minor may not be settled without court approval ... [and] a parent does not have the right to settle a minor’s claim without a guardian ad litem.”); Rivera v. Compton, 392 S.W.3d 326, 333 (Tex.App.-El Paso 2012, pet. granted) (“Because section 74.251(b) [of the Texas Civil Practice and Remedies Code] effectively cuts off a minor’s cause of action before the minor is legally able to assert it, thereby requiring the minor to satisfy an impossible condition, and fails to provide an adequate substitute remedy, we hold that section 74.251(b) violates the open court provision of the Texas Constitution as applied to minors injured before their eighth birthday.”). Why then is the majority so willing to permit law enforcement officials to engage in “fishing expeditions” when questioning a juvenile in the absence of a basis to believe that the juvenile was engaged in further delinquent conduct? By upholding the trial court’s ruling, the majority invites the police to run roughshod over a class of people who need the most protection.
Here, when Officer Hernandez confirmed his suspicion that J.T.M. was engaged in delinquent conduct, he should have informed J.T.M. of his constitutional rights before engaging in further questioning likely to elicit incriminating responses. Because Officer Hernandez did not do so, J.T.M.’s incriminating response that he had “weed” should have been suppressed by the trial court. And like the dissent in Patane, I believe that “courts should apply the fruit of the poisonous tree doctrine lest we create an incentive for police to omit Miranda warnings.” Patane, 542 U.S. at 645, 124 S.Ct. at 2631 (Souter J., dissenting). Accordingly, the trial court should have excluded the marihuana obtained from J.T.M.’s person and from the Tahoe. In sum, I would reverse the trial court’s order refusing to suppress J.T.M.’s statement and the marihuana and therefore dissent from this Court’s opinion that holds otherwise.