ACCEPTED
07-14-00339-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/14/2015 5:19:51 PM
Vivian Long, Clerk

NO. 07-14-00339-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

7/14/2015 5:19:51 PM

VIVIAN LONG
CLERK

_____

CURTIS WOODRUFF
V.
THE STATE OF TEXAS

_____

ON APPEAL FROM THE 140TH DISTRICT COURT
OF LUBBOCK COUNTY, TEXAS
CAUSE NO. 2014-403,191

_____

BRIEF FOR THE STATE

_____

MATTHEW D. POWELL
Criminal District Attorney
Lubbock County, Texas

TRACI BOWMAN
COURTNEY GRAFFT
Assistant Criminal District Attorneys
(Trial Attorneys)

ORAL ARGUMENT WAIVED

JEFFREY S. FORD
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536, Lubbock, TX 79408
Phone (806)775-1166
FAX: (806)775-7930
E-mail: JFord@co.lubbock.tx.us
(On appeal)
**ATTORNEY FOR THE STATE**

## Identity of Parties and Counsel

**Appellant:**

Curtis Woodruff

**Appellant's trial attorneys**:

Jesse Mendez, Attorney at Law, 2833 74th Street, Lubbock, TX 79423; phone (806)748-5287; fax (806)748-5256

Marlise Hernandez Boyles, Law Office of Jorge E. Hernandez, P.O. Box 2936, Lubbock, TX 79408; phone (806)765-7257

**Appellant's appellate counsel:**

Julie Panger, The Kiechler Law Firm, 619 Broadway Street, Lubbock, TX 79401; phone (806)712-2889; fax (808)712-2529

**State of Texas:**

At trial:

Traci Bowman & Courtney Grafft, Assistant Criminal District Attorneys, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806) 775-1100; fax (806)775-7930

On appeal:

Jeffrey S. Ford, Assistant Criminal District Attorney, Lubbock County Criminal District Attorney's Office, P.O. Box 10536, Lubbock, Texas 79408; phone (806) 775-1166; fax (806)775-7930

**Trial Judge:**

Honorable Jim Bob Darnell, Presiding Judge, 140th District Court of Lubbock County, Texas, Lubbock County Courthouse, 904 Broadway, Suite 349, Lubbock, TX 79401

## Table of Contents

Identity of Parties and Counsel ...................................................................i

Table of Contents ...................................................................................... ii

Table of Authorities .................................................................................v

Statement of the Case...............................................................................ix

Statement of the Facts ..............................................................................1

     *Suppression Hearing*...............................................................1

     *Trial Testimony (of Officer Sims)*.............................................5

Summary of the Argument.........................................................................7

Argument and Authorities.........................................................................9

First Issue Presented (Responsive to Appellant's First and Second Issues): Appellant argues that the trial court erred in failing to suppress the statements and physical evidence in the case because both the statements and the physical evidence were obtained without his *Miranda* warnings first being given, and that the evidence is legally insufficient to support the conviction but for the improper admission of the statements and physical evidence. The trial court properly denied the motion to suppress and allowed the admission of the statements because Appellant was not in custody when the statements were given. Even if the statements were improperly admitted, however, the physical evidence was still

admissible because (a) Appellant was not being interrogated when he was asked for consent to search; and (b) Appellant gave voluntary consent for a search of his pockets and the bag and case he had been carrying. Furthermore, the evidence was legally sufficient to support the conviction because a proper sufficiency review accounts for all the evidence in the case—regardless of whether it was properly or improperly admitted. Was Appellant in custody for *Miranda* purposes when he gave the relevant statements in the case? If the statements were improperly admitted at trial, was the consent to search and physical evidence nonetheless admissible into evidence? Was the evidence legally sufficient to support the conviction based on all of the evidence admitted at trial?........................................9

**I.** *Miranda* **custody standard**……………………………………………..10

**II. Appellant was not "in custody" within the meaning of** *Miranda*………13

**III.    Even if Appellant was "in custody" when he was handcuffed, the officer's action in asking for consent to search did not constitute "interrogation" for** *Miranda* **purposes**…………………………………20

**IV.    Even if Appellant was "in custody" when some or all of the relevant statements were given, the physical evidence,** *i.e.***, the checkbook and other evidence, would not have been required to be suppressed**…...21

**V. The evidence is legally sufficient to support the conviction**……………25

**Conclusion**………………………………………………………28

Conclusion and Prayer ........................................................................29

Certificate of Service ........................................................................29

Certificate of Compliance…………………………………………………30

Table of Authorities

**CONSTITUTIONAL PROVISIONS**                                    **PAGE**

U.S. CONST. amend. V…………………………………………………...10, 21

**U.S. SUPREME COURT & FEDERAL CASE LAW**

*U.S. v. Bengivenga*, 845 F.2d 593 (5th Cir.) (*op. on reh'g en banc*), *cert. denied*, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988)……………………………12

*Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)……...12

*Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)……20

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)……….25

*Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (*per curiam*)………………………………………………………………………….11

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).....*passim*

*U.S. v. Patane*, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (*plur. op.*)………………………………………………………………………21-22

*Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)...19, 20

*Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (*per curiam*)……………………………………………………………….........12

*U.S. v. Stevens*, 487 F.3d 232 (5th Cir.), *cert. denied*, 552 U.S. 936, 128 S.Ct. 336, 169 L.Ed.2d 236 (2007)…………………………………………………...21

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)………………..17

*Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)……11

**TEXAS CASE LAW**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011)………………………….26

*Alford v. State*, 358 S.W.3d 647 (Tex. Crim. App. 2012)………………………...13

*Baker v. State*, 956 S.W.2d 19 (Tex. Crim. App. 1997)………………………..22

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002)………………………18

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (*plur. op.*)…………….25

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)…………………...26-27

*Dowthitt v. State*, 931 S.W.2d 244 (Tex. Crim. App. 1996)……………...11, 12, 17

*Gardner v. State*, 306 S.W.3d 274 (Tex. Crim. App. 2009)…………………..11, 12

*Gear v. State*, 340 S.W.3d 743 (Tex. Crim. App. 2011)…………………………25

*Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007)……………….12-14, 17

*In re H.V.*, 252 S.W.3d 319 (Tex. 2008)…………………………………………22

*In re J.T.M.*, 441 S.W.3d 455 (Tex. App.—El Paso, no pet.)……………………24

*Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003)……………………..22, 24

*Jones v. State*, 7 S.W.3d 172 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)...21

*Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996)…………………………10

*Martinez v. State*, 272 S.W.3d 615 (Tex. Crim. App. 2008)…………………19, 20

*Meekins v. State*, 340 S.W.3d 454 (Tex. Crim. App. 2011)………………………23

*State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012)………………………17-19

*Ramirez v. State*, 105 S.W.3d 730 (Tex. App.—Austin 2003, no pet.)…………...17

*Rhodes v. State*, 945 S.W.2d 115 (Tex. Crim. App. 1997)………………………..19

*Wert v. State*, 383 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2012, no pet.)..18

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)………………………27

## TEXAS RULES AND STATUTES

TEX. CODE CRIM. PROC. ANN. art. 38.22…………………………………………...14, 19

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a)……………………………………...10

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 5……………………………………...14

TEX. PEN. CODE ANN. § 32.51(b)(1)………………………………………………27

TEX. R. APP. P. 3.2………………………………………………………………..viii

TEX. R. APP. P. 44.2(a)………………………………………………………………24

NO. 07-14-00339-CR

IN THE
COURT OF APPEALS
SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

_____

CURTIS WOODRUFF
V.
THE STATE OF TEXAS

_____

BRIEF FOR THE STATE

_____


**To the Honorable Court of Appeals**:

The State of Texas, the prosecuting authority in Cause No. 2014-403,191 in the 140th District Court of Lubbock County, and Appellee before the Seventh Court of Appeals, respectfully submits this brief in reply to the brief filed by Appellant appealing his conviction for the offense of Fraudulent Use or Possession of Identifying Information. The parties will be referred to as "Appellant" and "State."[1]

---

[1] TEX. R. APP. P. 3.2.

## Statement of the Case

Appellant was charged by indictment in Cause No. 2014-403,191 on August 5, 2014, with the offense of fraudulent use or possession of identifying information, for an offense alleged to have occurred on October 1, 2013. (Clerk's Record (CR) p. 7). Following a two-day jury trial, from August 25-26, 2014, Appellant was convicted of the offense by the jury. (CR p. 74) (Reporter's Record (RR) vol. 5, p. 29). The trial court assessed Appellant's punishment at eighteen (18) years imprisonment on August 27, 2014. (CR pp. 82-85) (RR vol. 6, pp. 14-15). The trial court certified that Appellant has the right of appeal. (CR p. 78) (RR vol. 6, p. 15).

<u>Statement of Facts</u>

*Suppression Hearing:*

Prior to the start of the *voir dire* examination, Appellant asked whether the State was planning to introduce his un-*Mirandized* statements during trial. After the State said that it was planning on introducing those statements, a hearing was held (immediately after the jury was sworn in) to determine whether the statements were admissible in the absence of the *Miranda* warnings having first been given. (RR vol. 3, pp. 7, 113-58). Officer Brad Sims was called as the sole witness at the hearing. (RR vol. 3, pp. 116-50).

Officer Sims testified about the stop, search and seizure, and statements given by Appellant. He was working patrol on the night of October 1, 2013, when he received a call from dispatch directing him to the 2000 block of 10th Street for a vehicle burglary possibly in progress. He was advised that an unknown male had been walking up to cars pulling on door handles and had made entry into a vehicle that was unlocked. When the 9-1-1 callers approached him, the man fled northbound. (RR vol. 3, pp. 117-18). Sims arrived in the area looking for a black male wearing a blue and white striped shirt, wearing a blue bandanna, and carrying a black bag (which was the description given by dispatch). (RR vol. 3, p. 118). Sims went from the 2000 block of 10th Street and started looking northeast, which is the way he had been advised the unknown male had fled. (RR vol. 3, p. 119).

Sims saw a man matching the description in the parking lot of the Stripes store at Avenue Q and Marsha Sharp Freeway. (RR vol. 3, pp. 119, 133).

Sims came in contact with the man after activating his emergency lights. The man—who was identified in court as Appellant—was wearing a light gray and blue striped shirt, a blue bandanna on his head, and had a black bag around his shoulder, and was carrying what appeared to be a black briefcase in his hand. (RR vol. 3, pp. 120-21, 134). Sims told Appellant to place everything that was in his hands on the ground and walk towards him (based on his suspicion that Appellant had just committed a vehicle burglary and had multiple things in his hand that he could conceal weapons in, as well as the potential to conceal weapons in his clothing. (RR vol. 3, pp. 121-22, 134). Sims conducted a pat-down search; nothing was discovered during the pat-down search. (RR vol. 3, p. 122). Appellant was not free to leave at that time. (RR vol. 3, p. 136).

Sims then asked for and received verbal consent to search Appellant's pockets. Sims located two debit cards (a MasterCard and a Visa card) in Appellant's right front pocket. (RR vol. 3, pp. 122-23, 136). Sims noticed that the names on the cards (Joe Ramirez and Jennifer Martinez) did not match Appellant. When asked who the cards belonged to, Appellant advised that the cards belonged to his girlfriend—though he said his "girlfriend's" name was Jennifer, but did not know her last name. (RR vol. 3, pp. 123, 137). When asked about the second card

that had a male's name on it, Appellant stated that he did not know whose card it was and that he found the cards on the ground. (RR vol. 3, p. 124). After hearing the inconsistent explanations, Sims placed Appellant in handcuffs to detain him and escorted him back to his patrol car. *Id.* Sims placed Appellant in handcuffs for the following reasons: (1) based on his belief that a crime had occurred; (2) because Appellant was a suspect in that crime; (3) for Sim's safety since he was still by himself (since Appellant is a significantly larger man than Sims)[2]; and (4) to limit Appellant's use of his hands so he would not be able to fight or flee. However, Appellant was not under arrest at that time since an investigation was still ongoing. (RR vol. 3, p. 125).

After Sims placed Appellant in his patrol vehicle, he wanted to further investigate who the cards belonged to. *Id.* Appellant gave verbal consent to search the bag and the case that he had had with him. (RR vol. 3, pp. 125-26, 137). The drawstring Cowboys bag contained a knife and a checkbook with multiple checks in it (eleven checks). The checks belonged to Harold and Shirley Dron. (RR vol. 3, p. 126). Sims also located a small envelope from Chase bank with $25.00 dollars inside of it, a window breaking tool, a Walgreen's bag full of five unopened Copenhagen cans, an HTC phone charger, a wheel lock key, an air purifier, and

---

[2] Officers Brennan Kent and Belinda House eventually arrived on the scene, but they arrived after Appellant had been handcuffed. (RR vol. 3, pp. 143-44, 146, 150).

loose change ($13.74 in all). (RR vol. 3, pp. 126-27, 141). Sims believed those items were suspicious because they were all items that can immediately be located in a vehicle. (RR vol. 3, p. 127). The black case contained a portable gas grill. (RR vol. 3, p. 129).

Sims *Mirandized* Appellant after locating the checks and other items inside of the bag. Appellant waived his *Miranda* rights and agreed to speak to him. (RR vol. 3, pp. 127-28, 143, 145). He was not under arrest at that time. (RR vol. 3, p. 127). Appellant told Sims that he was walking to the Avenue Q Wal-Mart when he located the plastic bag by the Flying J with the two debit cards inside of the bag. He pulled the debit cards out of the bag and placed them in his pocket. He then walked to the Wal-Mart, used the change counter, and was walking back to the Coronado Inn when he was stopped by Sims. (RR vol. 3, p. 128). He also said he was never in the area of 10th Street. (RR vol. 3, p. 129). He said he was carrying the portable gas grill because he and his girlfriend had just gotten into a fight and she drove by and dropped it off with him because she was moving out. *Id.* After attempting (without success) to locate the victims of the checkbook and debit cards thefts, Sims placed Appellant under arrest. (RR vol. 3, pp. 129-30, 150).

Following Officer Sims' testimony, Appellant argued that the statements should be suppressed because Sims should have *Mirandized* him either when he had Appellant place his hands on the patrol car or when Sims placed Appellant in

4

handcuffs and placed him in the patrol car since he was in custody (in that he was not free to leave). (RR vol. 3, pp. 152-57). The State argued that this was a temporary detention while Sims investigated the possible car burglaries. When Sims found the debit cards, that was a continuation of the temporary detention to find out information about why he could potentially have those cards. And, the search of the bag and the case was done based on consent. (RR vol. 3, pp. 155-56). The trial court ruled that it would "overrule your objection as far as the pat-down and the consent to search his pockets and the consent to search the bag and case that he had. The Court will sustain your objection as far as going into any statements the Defendant made after the point in time he was *Mirandized*. Prior to that time, the Court will allow the State to go into those statements that he made to the officer during that investigative stop."[3] (RR vol. 3, p. 158).

*Trial Testimony (of Officer Sims):*

Officer Sims was called as the second State's witness during trial. He received a call from dispatch at 1:20 a.m. on October 1, 2013, about a possible burglary of a vehicle in progress. (RR vol. 4, p. 16). Sims found Appellant, as the man matching the description provided him by dispatch, in the area of Marsha Sharp and Avenue Q at the Stripes store. (RR vol. 4, p. 17). Sims activated his

---

[3] Appellant waived his objection to the admission of the post-*Miranda* statements prior to the start of the guilt-innocence phase of trial. (RR vol. 4, pp. 6-7).

lights, after which Appellant stopped, turned around, and looked at him. Sims had Appellant put down the black bag and case he was carrying and walk to him. (RR vol. 4, pp. 19, 21). Sims had Appellant place his hands on the hood of his patrol car so he could perform a pat-down search. Sims was still by himself when he performed the pat-down search. (RR vol. 4, p. 22). Appellant gave verbal consent to search his pockets. Sims found two debits cards in Appellant's right front pocket that belonged to two separate people. (RR vol. 4, pp. 23-24). Sims asked Appellant about the debit cards to determine if he had the right to have those cards on him. Appellant said that the cards belonged to his "girlfriend." When asked about the card with the man's name on it, he said he did not know who the other one was. (RR vol. 4, pp. 24-25). Appellant then changed his story to say he found the cards on the ground. (RR vol. 4, p. 25).

Sims decided to place Appellant in handcuffs for his (Sims') safety to detain Appellant while he further investigated whether Appellant had the right to possess those debit cards. He placed Appellant in the back of his patrol car. He did not inform Appellant that he was under arrest at that time. (RR vol. 4, p. 26). Appellant gave verbal consent to search the bag and the case he had been carrying. *Id.* Sims first searched the drawstring bag. He found a knife, a checkbook for Harold and Shirley Dron, an envelope from Chase Bank with $25 in it, a window breaking tool, an open Walgreen's bag with five unopened Copenhagen snuff cans inside of

it, numerous miscellaneous receipts, a cashier's check receipt from Bank of America, a HTC phone charger, tire wheel lock key, an auto air purifier, and $13.34 in loose change. (RR vol. 4, pp. 26-36). Inside of the black case was a portable gas grill. (RR vol. 4, p. 37).

After searching the bag and the case, Sims *Mirandized* Appellant because he wanted to ask Appellant specific questions about an offense that he believed had just occurred. (RR vol. 4, p. 37). Appellant waived his *Miranda* rights and agreed to talk to him. *Id.* After Appellant provided his explanation (and after Sims unsuccessfully tried to locate the victims), Sims placed Appellant under arrest. (RR vol. 4, pp. 37-40, 67).

## Summary of the Argument

Appellant argues in his first issue that the trial court erred in failing to suppress the statements and physical evidence in the case because the statements and physical evidence were obtained without his *Miranda* warnings first being given. The evidence was admissible because Appellant was not "in custody" when the statements at issue were given—in that his freedom of movement had not been restricted to the degree associated with an arrest.

Assuming, *arguendo*, that some or all of the statements were improperly admitted, neither the consent to search nor the physical evidence was required to

be suppressed. First, the consent to search the bag and case—done after Appellant was handcuffed and placed in a squad car—did not constitute "interrogation" for *Miranda* purposes since the act of giving consent did not constitute an incriminating statement. Second, the physical evidence was properly admitted because the "fruit of the poisonous tree" doctrine does not require suppression of the physical fruits (*i.e.*, the checkbook and other items located within the bag and case) of a suspect's unwarned but voluntary statements. Because the consent to search the bag and case and the physical evidence located within the bag and case were properly admitted, any error from the "improper" admission of the statements was harmless beyond a reasonable doubt.

Appellant argues in his second issue that the evidence is legally insufficient to support the conviction because the statements and evidence was improperly admitted at trial. But, since a sufficiency review takes account of *all* of the evidence admitted at trial, regardless of whether it was properly or improperly admitted, the statements and physical evidence admitted during trial should be considered in the sufficiency analysis. The evidence was legally sufficient since it shows that Appellant possessed the victim's checkbook without the victim's consent with the intent to harm or defraud her.

First Issue Presented
(Responsive to Appellant's First and Second Issues)

Appellant argues that the trial court erred in failing to suppress the statements and physical evidence in the case because both the statements and the physical evidence were obtained without his *Miranda* warnings first being given, and that the evidence is legally insufficient to support the conviction but for the improper admission of the statements and physical evidence. The trial court properly denied the motion to suppress and allowed the admission of the statements because Appellant was not in custody when the statements were given. Even if the statements were improperly admitted, however, the physical evidence was still admissible because (a) Appellant was not being interrogated when he was asked for consent to search; and (b) Appellant gave voluntary consent for a search of his pockets and the bag and case he had been carrying. Furthermore, the evidence was legally sufficient to support the conviction because a proper sufficiency review accounts for all the evidence in the case—regardless of whether it was properly or improperly admitted. Was Appellant in custody for *Miranda* purposes when he gave the relevant statements in the case? If the statements were improperly admitted at trial, was the consent to search and physical evidence nonetheless

admissible into evidence? Was the evidence legally sufficient to support the conviction based on all of the evidence admitted at trial?

### I. *Miranda* **custody standard**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The *Miranda*[4] court stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Those procedural safeguards, known as the *Miranda* warnings, are codified in Texas as Article 38.22 § 2(a) of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a); *see Jones v. State*, 944 S.W.2d 642, 650 n. 11 (Tex. Crim. App. 1996).

The Supreme Court limited the application of *Miranda* warnings to statements that stem from *custodial interrogation*. Custodial interrogation is described as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444, 86 S.Ct. at 1612. *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

him 'in custody.'" *Thompson v. Keohane*, 516 U.S. 99, 107, 116 S.Ct. 457, 463, 133 L.Ed.2d 383 (1995), *citing Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (*per curiam*).

> There are at least four general situations that may constitute custody:
>
> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *accord Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). For the first through third *Dowthitt* factors, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. For the fourth *Dowthitt* factor, the officer's knowledge of probable cause must be manifested to the suspect, with such manifestation occurring either by transmission of information substantiating probable cause by the officers to the suspect, or by the suspect to the officers. *Id.* at 255. In the fourth factor, custody is not automatically established merely because probable cause is manifested; rather, "custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.* The appropriate inquiry is whether the

suspect has been formally arrested or had his or her freedom of movement restricted to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994) (*per curiam*); *Gardner*, 306 S.W.3d at 293-94.

The determination of whether a suspect was in custody must be made on an *ad hoc* basis, after considering all of the *objective* circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529; *Dowthitt* at 255. A person is in "custody" only if, under the circumstances, a *reasonable person* would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury* at 322-25, 114 S.Ct. at 1528-30; *Herrera* at 525. The "reasonable person" standard presupposes an *innocent* person. *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (*emphasis taken from opinion*); *Dowthitt* at 254. The "reasonable person," for purposes of the custody determination, must be "neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *U.S. v. Bengivenga*, 845 F.2d 593, 596 (5th Cir.) (*op. on reh'g en banc*), *cert. denied*, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988).

When reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: "it affords almost total deference the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). A trial judge's ultimate "custody" determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). When a trial judge denies a motion to suppress and does not enter findings of fact, the evidence is viewed in the light most favorable to the trial court's ruling, with the Court assuming that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera*, 241 S.W.3d at 527.

## II. Appellant was not "in custody" within the meaning of *Miranda*

Appellant argues in his first issue that the trial court erred in failing to suppress his un-*Mirandized* statements and the physical evidence obtained by Officer Sims because those statements and evidence were obtained in violation of *Miranda*. In particular, he argues that "[f]rom the time [Appellant] placed his hands on the patrol vehicle, he was in a custodial interrogation, and he should have

been read his *Miranda* rights."[5] He further argues that the "level of deprivation" only increased because he "was later arrested, placed in the patrol car, and then formally arrested and taken to jail."[6] The issue to be determined here is whether Appellant was "in custody" when the statements at issue were given. If Appellant was not "in custody" when the statements were given, then the statements were not required to be suppressed because "nothing in [Article 38.22] precludes the admission . . . of a statement that does not stem from custodial interrogation."[7]

The evidence adduced from both the suppression hearing and trial shows the following:

1. Officer Sims detained Appellant near the Stripes store at Avenue Q and Marsha Sharp Freeway based on reasonable suspicion that Appellant had been involved in several vehicle burglaries a few blocks away from that area;

2. After seeing that Appellant was carrying a bag and a case, Sims had Appellant place the items on the ground and walk towards him due to concern that Appellant could have weapons in his possession;

---

[5] (Appellant's Br. at 10).
[6] (Appellant's Br. at 8).
[7] TEX. CODE CRIM. PROC. ANN. art. 38.22 § 5. The Court of Criminal Appeals' construction of "custody" for purposes of Article 38.22 is consistent with the meaning of "custody" for *Miranda* purposes. *Herrera* at 526.

3. Sims had Appellant place his hands on the hood of his patrol car so he could perform a pat-down search of Appellant due to his reasonable belief that Appellant could have weapons in his possession;

4. A patdown search was conducted, but nothing was found during the patdown;

5. Appellant was not free to leave at that time because Sims was conducting an investigative detention;

6. Sims asked for and received verbal consent to search Appellant's pockets.

7. When Sims searched Appellant's pockets, he located two debit cards in Appellant's right front pocket, neither of which had Appellant's name on them;

8. After seeing that neither of the cards had Appellant's name on them, Sims asked who the cards belonged to;

9. After Appellant gave inconsistent stories about who the cards belonged to and where he found them, Sims placed Appellant in handcuffs to detain him—in part because there was a safety issue since Sims was still the only officer on the scene at that time—and put Appellant in his patrol car;

10. Appellant was not under arrest when he was placed in handcuffs since the handcuffing was part of an investigative detention to further investigate whether Appellant had the right to possess the debit cards;

15

11. Appellant was not informed that he was being placed under arrest for anything at that time;

12. After placing Appellant in his patrol vehicle, Sims asked for—and received—verbal consent to search the bag and case that Appellant had had with him;

13. When the bag was searched, Sims found (among other items) a checkbook with Harold and Shirley Dron's names inside;

14. Appellant was then read his *Miranda* warnings since Sims wanted to ask Appellant specific questions about an offense that he believed had just occurred;

15. Appellant waived his *Miranda* rights and agreed to speak to Sims; and

16. After hearing Appellant's story and unsuccessfully trying to locate the victims, Appellant was placed under arrest.

The trial court properly denied Appellant's verbal motion to suppress the statements at issue. Though no findings of fact were filed, an implicit finding of fact supporting the trial court's ruling would be that Appellant was not "in custody" at any time before the *Miranda* warnings were given because the investigative detention had not evolved into a custodial detention. This implicit finding of fact is supported by the record.

Appellant first argues that he was in custody when he was ordered to place his hands on the patrol vehicle because he was "deprived of his freedom of action in a very significant way—he was not free to leave when he was ordered to place his hands on the patrol vehicle."[8] However, the proper standard for determining custody is not whether the restriction on the detainee's freedom of movement is just "significant"; instead, it must be to the degree associated with an arrest. *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012), *citing Dowthitt* at 255; *Herrera* at 525.

Under the proper standard, Officer Sims' actions in having Appellant place his hands on the hood of his patrol car did not elevate the situation beyond an investigative detention since it was part of a permissible *Terry*[9] frisk—in that Sims reasonably believed that Appellant may be carrying a weapon. *See Ramirez v. State*, 105 S.W.3d 730, 739-40 (Tex. App.—Austin 2003, no pet.). Likewise, the search of his pockets did not convert the investigative detention into a custodial detention since it was simply a continuation of the investigative detention and did not constitute a restriction upon freedom of movement that would be associated with an arrest as opposed to an investigative detention.

---

[8] (Appellant's Br. at 8).
[9] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Appellant further argues that the deprivation of freedom of movement continued when he was later "arrested" and placed in the patrol car before being formally arrested.[10] However, his argument seems to be predicated on his belief that the officer's act of handcuffing him and placing him in his patrol car equates to custodial (as opposed to investigative) detention. But, placing handcuffs on a defendant and placing him or her in a patrol car does not, in and of itself, mean that a suspect is "in custody" for *Miranda* purposes. *See Wert v. State*, 383 S.W.3d 747, 754 (Tex. App.—Houston [14th Dist.] 2012, no pet.), *citing Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002). Instead, handcuffing is "only one of a range of relevant factors" to rely upon in determining whether a defendant is in custody for *Miranda* purposes. *See Ortiz*, 382 S.W.3d at 374.

Under the facts of this case, the handcuffing and placement of Appellant in the patrol car did not convert the investigative detention into a custodial detention. Sims handcuffed Appellant and placed him into the patrol car after hearing the inconsistent explanations about the debit cards. Appellant was not told that he was being placed under arrest or that Sims had probable cause to believe he had committed an offense. Instead, Sims placed Appellant in handcuffs for officer safety reasons because he suspected that a crime had occurred (but without relaying that suspicion to Appellant) and he (Sims) was still by himself at the time.

---

[10] (Appellant's Br. at 8).

The handcuffing was part of the continued investigative detention so Sims could further investigate whether Appellant had the right to possess the debit cards. Thus, the act of handcuffing Appellant for officer safety reasons and placing him in his patrol car was part of a valid investigative detention while the investigation into Appellant's legal right to possess the debit cards was ongoing.[11]

Based on the objective circumstances of the interrogation, Appellant was not "in custody" for *Miranda* or Article 38.22 purposes until after the bag had been searched and the checkbook was located. That is because a reasonable person would not believe that he or she was "in custody" until that point. Contrary to Appellant's contention,[12] this was not a case where the practice of "question first and warn later" was used in the hopes of obtaining incriminating evidence and then delivering the *Miranda* warnings "midstream."[13] A "question first and warn later" policy presupposes that the suspect is in *custody* when he or she is interrogated and

---

[11] *See Rhodes v. State*, 945 S.W.2d 115, 117-18 (Tex. Crim. App. 1997) (finding that the handcuffing of the appellant was part of a proper temporary investigative detention based on officer safety considerations); *cf. Ortiz* at 374-75 (finding that the handcuffing had changed the detention into a custodial arrest because the officers stated in the appellee's presence that they had found something illegal or dangerous on the appellee's wife's person and the officers handcuffed the appellee at the same time his wife was handcuffed, thereby conveying to the appellee the officers' belief that the appellee was associated with his wife's illicit behavior).
[12] (Appellant's Br. at 7, 10-11).
[13] *See Missouri v. Seibert*, 542 U.S. 600, 609-17, 124 S.Ct. 2601, 2608-13, 159 L.Ed.2d 643 (2004) (discussing the police tactic of intentionally withholding *Miranda* warnings until after interrogating and drawing out a confession before giving the *Miranda* warnings and then asking for a waiver, after which the officers would elicit a subsequent incriminating statement—known as the "question-first" tactic); *Martinez v. State*, 272 S.W.3d 615, 619-21, 626-27 (Tex. Crim. App. 2008) (discussing the "two-step strategy" of interrogating first and warning later).

is only given *Miranda* warnings after a confession is given.[14] That debunked policy

was not at issue here, however, since Appellant was not in custody when he gave

the relevant statements at issue.

### III. Even if Appellant was "in custody" when he was handcuffed, the officer's action in asking for consent to search did not constitute "interrogation" for *Miranda* purposes

For the reasons noted above, the handcuffing did not constitute "custody"

for *Miranda* purposes. As such, there is no need to consider whether Appellant had

been interrogated when he was asked for consent to search the bag and case. But,

even if he was in "custody" when he was handcuffed and placed in the back of the

patrol car, *Miranda* warnings were still not required to be given since he was not

being interrogated when he was asked for consent to search the bag and case.

Interrogation, for *Miranda* purposes, "refers not only to express questioning,

but also to any words or actions on the part of the police (other than those normally

attendant to arrest and custody) that the police should know are reasonably likely

to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446

U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). However, the act

of asking for consent to search does not constitute interrogation since the act of

---

[14] *See Seibert*, 542 U.S. at 604, 124 S.Ct. at 2605 ("This case tests a police protocol for *custodial interrogation* that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession.") (*emphasis added*); *Martinez*, 272 S.W.3d at 627 ("In this case, the officers did not apprise appellant of his *Miranda* rights when they began *custodial interrogation* and failed to apply any curative measures in order to ameliorate the harm caused by the *Miranda* violation.") (*emphasis added*).

granting consent is not, in and of itself, an incriminating statement or testimonial for Fifth Amendment purposes. *See U.S. v. Stevens*, 487 F.3d 232, 242 (5th Cir.), *cert. denied*, 552 U.S. 936, 128 S.Ct. 336, 169 L.Ed.2d 236 (2007); *Jones v. State*, 7 S.W.3d 172, 175 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

Sims' act of asking for consent to search the bag and case was not reasonably likely to elicit an incriminating response from Appellant—and Appellant's act of granting consent to search did not constitute an incriminating statement. After Appellant was placed in handcuffs and put in the patrol car, Sims asked for and was granted verbal consent to search the bags.[15] The next verbal statement from Appellant that shows up in the record was Appellant's waiver of his *Miranda* rights and agreement to speak to Officer Sims.[16] Since there was no interrogation for *Miranda* purposes when Sims asked for and received consent to search the bag and case, the granting of consent is admissible.

#### IV. Even if Appellant was "in custody" when some or all of the relevant statements were given, the physical evidence, *i.e.*, the checkbook and other evidence, would not have been required to be suppressed

The failure to give a suspect the *Miranda* warnings does not require suppression of the physical fruits of the suspect's unwarned but voluntary statements. *U.S. v. Patane*, 542 U.S. 630, 634, 124 S.Ct. 2620, 2624, 159 L.Ed.2d

---

[15] (RR vol. 3, pp. 125-26; vol. 4, p. 26).
[16] (RR vol. 3, p. 128; vol. 4, p. 37).

667 (2004) (*plur. op.*); *Jones v. State*, 119 S.W.3d 766, 773 (Tex. Crim. App. 2003); *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997); *In re H.V.*, 252 S.W.3d 319, 329 (Tex. 2008). In *Patane*, the U.S. Supreme Court determined that the nontestimonial fruit of a voluntary statement given in the absence of *Miranda* warnings, *i.e.*, the weapon that formed the basis of the defendant's felon-in-possession-of-firearm trial, was not required to be suppressed since the weapon was recovered based on the suspect's voluntary statements that he possessed it and advising the officers where it could be found. *Patane*, 542 U.S. at 634-35, 643, 124 S.Ct. at 2624-25, 2630.

Even if Appellant had been in custody for *Miranda* purposes when the checkbook and other physical evidence was located during the searches, that would not require suppression of the physical evidence since Appellant voluntarily consented to a search of the bag from which the physical evidence at issue was located (as discussed in the preceding section of this brief). The evidence shows that Appellant gave voluntary consent to search both his pockets[17] and the bag and case he had been carrying.[18] There was never any argument presented during the suppression hearing that his consent to search was involuntary. While Appellant did argue at the conclusion of the suppression hearing that he could not make the

---

[17] (RR vol. 3, pp. 122, 136; vol. 4, p. 23).
[18] (RR vol. 3, pp. 125-26) (RR vol. 4, p. 26).

decision to consent without first being provided his *Miranda* warnings,[19] that is not the proper standard for determining voluntariness of consent. Instead, the question in determining whether consent to search is voluntary is "whether the person's 'will ha[s] been overborne and his capacity for self-determination critically impaired,' such that his consent to search must have been involuntary." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011).

In light of the evidence showing that Appellant was cooperative throughout the investigation, consented both to a search of his pockets and the bag and case he had been carrying, and that he waived his *Miranda* warnings and agreed to speak to Officer Sims, the evidence shows that Appellant's consent to the search of the bag was voluntary.[20] Thus, because the consent to search the bag was voluntary, the physical fruits of the unwarned but voluntary statements (the checkbook and the identity of the owner of the checkbook) did not require suppression, even if the un-*Mirandized* statements did require suppression.

Because the physical fruits of the unwarned but voluntary statements were not required to be suppressed, any error in the admission of the un-*Mirandized* statements was harmless beyond a reasonable doubt (under a constitutional harm

---

[19] (RR vol. 3, p. 158).

[20] *See generally Meekins*, 340 S.W.3d at 462-64 (determining that the consent to search was voluntary in light of the defendant's actions in cooperating with the officer by giving consent and then stepping out of the vehicle so the officer could perform a search).

analysis[21]) since "the record does not support a conclusion that the trial court's error probably caused the rendition of an improper judgment."[22] This is so because the improper un-*Mirandized* statements (if any) amounted to evidence that Appellant gave inconsistent statements about who the debit cards belonged to and where he found them (since the act of consenting to a search did not constitute interrogation). The testimony about the inconsistent statements, however, did not relate to the issue of whether Appellant possessed identifying information of the victim without her consent and with the intent to harm or defraud her—which was proven not by the un-*Mirandized* statements, but by the testimony that Appellant possessed the checkbook without the victim's consent after the checkbook had been stolen from her. Therefore, any error from the erroneous admission of the un-*Mirandized* statements did not "materially affect[] the jury's deliberations"[23] and was therefore harmless.

---

[21] See *Jones*, 119 S.W.3d at 777-83 (applying a Rule 44.2(a) constitutional harm analysis to a *Miranda* violation).

[22] *See In re J.T.M.*, 441 S.W.3d 455, 463-66 (Tex. App.—El Paso, no pet.) (finding that the error from admission of an un-*Mirandized* statement where the defendant admitted to having additional marijuana in the Chevy Tahoe was harmless because there was sufficient evidence affirmatively linking the defendant to the marijuana found in the vehicle even without his post-arrest statement—with some of that evidence being the physical fruits of the first statement (*i.e.*, the marijuana which the defendant removed from his pocket and placed on the hood of the patrol car)).

[23] *Jones*, 119 S.W.3d at 777.

## V. The evidence is legally sufficient to support the conviction

Appellant argues in his second issue that the evidence presented at trial was insufficient to prove that Appellant fraudulently used or possessed identifying information. In particular, he argues that without Officer Sims' testimony, which should have been suppressed, the evidence was insufficient to prove that Appellant committed the offense of fraudulent use or possession of identifying information because no witnesses were able to identify Appellant as the person who allegedly burglarized vehicles.

In assessing the sufficiency of the evidence, an appellate court views all the evidence in the light most favorable to the verdict and determines, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "Sufficient evidence is 'such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded.' In criminal cases, only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (*plur. op.*) (Cochran, J., concurring). A sufficiency review

determines whether "the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all the evidence." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

Appellant's sufficiency argument is contingent upon his assertion that Officer Sims' testimony was improperly admitted into evidence. However, that claim lacks merit for the reasons discussed in the preceding sections of this brief. Appellant's statements during the course of the investigation were properly admitted during trial because Appellant was not in custody at the time the statements at issue were given. And, the physical evidence and consent to search obtained during the course of the investigation were properly admitted, even if the statements were not, because the fruit of the poisonous tree doctrine does not require suppression of physical evidence obtained as a result of the un-*Mirandized* statement.

Additionally, even if the statements and/or physical evidence were improperly admitted, that would still not affect whether the evidence was sufficient to support the conviction. In conducting a legal sufficiency review, courts "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.' [The] review of 'all of the evidence' includes evidence that was *properly and improperly admitted*." *Clayton v. State*, 235 S.W.3d 772,

778 (Tex. Crim. App. 2007) (*internal footnote omitted*) (*emphasis added*); *see also Winfrey v. State*, 393 S.W.3d 763, 774 (Tex. Crim. App. 2013) (stating that in conducting a legal sufficiency analysis, a reviewing court "must consider the cumulative force of all the evidence, including improperly admitted evidence.") (*internal footnote omitted*). Thus, even *if* the statements and/or physical evidence was improperly admitted, the legal sufficiency review would still include both the statements and physical evidence.

Under the proper standard, the evidence was legally sufficient to support the conviction. To commit the offense of fraudulent use or possession of identifying information (as alleged in the indictment here[24]), Appellant had to, with the intent to harm or defraud another, and without the consent of Shirley Dron, possess identifying information of Shirley Dron, *i.e.*, her checkbook containing her name, address, bank routing number, and account number. *See* TEX. PEN. CODE ANN. § 32.51(b)(1). As shown from the trial testimony, Appellant possessed Shirley Dron's checkbook with the intent to harm or defraud her, and that the possession of the identifying information was without Ms. Dron's consent.[25] Therefore, based on the evidence admitted at trial (regardless of whether it was properly or improperly admitted), any rational trier of fact could have found the essential elements of the

---

[24] (CR p. 7).
[25] (RR vol. 4, p. 60).

offense of fraudulent use or possession of identifying information beyond a reasonable doubt.

## Conclusion

The trial court properly denied Appellant's verbal motion to suppress and allowed the admission of the statements into evidence during trial because the statements were not given while Appellant was "in custody" for *Miranda* purposes. Even if he was "in custody" for *Miranda* purposes, however, Appellant's consent to search the bag and case and the physical fruits of the search were not required to be suppressed, even if some or all of Appellant's pre-*Miranda* statements were required to be suppressed. Any error in the "improper" admission of the pre-*Miranda* statements was harmless beyond a reasonable doubt because the physical fruits of the search were not required to be suppressed—which was the evidence that led to Appellant's conviction for the offense of fraudulent use or possession of identifying information. Furthermore, the evidence was legally sufficient to support the conviction since all the evidence admitted during trial, regardless of whether it was properly or improperly admitted, is considered in a legal sufficiency review.

Appellant's first and second issues should be overruled.

## Conclusion and Prayer

For the reasons stated above, no reversible error has been committed and the State respectfully requests that the Court should affirm the judgment and sentence in all things.

Respectfully submitted,

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Jeffrey S. Ford
Jeffrey S. Ford
Assistant Criminal District Attorney
Lubbock County, Texas
State Bar No. 24047280
P.O. Box 10536
Lubbock, Texas 79408
(806)775-1166
FAX (806)775-7930
E-mail: JFord@co.lubbock.tx.us

## Certificate of Service

I certify that a true copy of the foregoing brief has been delivered to Julie Panger, Attorney for Appellant, by e-mail delivery to julie@thelubbocklawyer.com on July 14, 2015.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Jeffrey S. Ford
Jeffrey S. Ford

29

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), I further certify that, relying on the word count of the computer program used to prepare the foregoing State's Response, this document contains 6,354 words, inclusive of all portions required by TEX. R. APP. P. 9.4(i)(1) to be included in calculation of length of the document.

*MATTHEW D. POWELL*
Criminal District Attorney
State Bar No. 00784782


By: /s/ Jeffrey S. Ford
Jeffrey S. Ford